**VIRGINIA:**

## IN THE CIRCUIT COURT FOR PRINCE WILLIAM COUNTY

JENNY ZAMBRANO
8033 Lomond South Drive
Manassas, VA 20110

      Plaintiff,

v.

CL 09002317-00

HSBC Bank USA, N.A., as Trustee under the
POOLING AND SERVICING AGREEMENT
DATED AUGUST 1, 2006,
FREMONT HOME LOAN TRUST 2006-B
(Office of the President)
452 Fifth Avenue
New York, NY 10018

      SERVE: Secretary of the Commonwealth
      Service of Process Department
      Post Office Box 2453
      Richmond, VA 23218

and

FREMONT INVESTMENT & LOAN CORP.
(a/k/a Fremont Reorganizing Corporation),
a California corporation
2727 East Imperial Highway
Brea, CA 92821

      SERVE: Registered Agent:
      CT Corporation System
      4701 Cox Road
      Glen Allen, VA 23060

and

FREMONT HOME LOAN TRUST 2006-B
2727 East Imperial Highway
Brea, CA 92821

      SERVE: Secretary of the Commonwealth
      Service of Process Department
      Post Office Box 2453
      Richmond, VA 23218



**EXHIBIT**
**A**

and

LITTON LOAN SERVICING LP,
a Delaware limited partnership
4828 Loop Central Drive
Houston, TX 77081

>SERVE: Secretary of the Commonwealth
>Service of Process Department
>Post Office Box 2453
>Richmond, VA 23218

and

WELLS FARGO BANK, NA, as Investor, Individually and as
Trust Administrator, Jointly and Severally
(Office of the President)
420 Montgomery Street
San Francisco, CA 94163

>SERVE: Secretary of the Commonwealth
>Service of Process Department
>Post Office Box 2453
>Richmond, VA 23218

and

✓MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.,
a Delaware corporation,
1818 Library Street
Reston, VA 20190

>SERVE: Registered Agent:
>Sharon Horstkamp, Esq.
>1818 Library Street   Suite 300
>Reston, VA 20190

And

GLASSER AND GLASSER, P.L.C.,
a Virginia limited liability company
Crown Center Building, Suite 600
580 East Main Street
Norfolk, VA 23510

>SERVE: Registered Agent:
>Michael A. Glasser, Esq.

580 E. Main Street   Suite 600
Norfolk, VA 23510

and

NECTAR PROJECTS, INC.,
a Virginia corporation
104 North Bailey Lane, Suite 100
Purcellville, VA 20132

      SERVE: Registered Agent:
      Tina B. McDaniel
      104 N. Bailey Lane   Suite 100
      Purcellville, VA 20132

and

LONG & NEYHART, P.C.
(n/k/a Neyhart, Robertson &McConnell, P.C.),
a Virginia professional corporation
107 Church Street Northeast
Blacksburg, VA 24060

      SERVE: Registered Agent:
      Tracy Neyhart, Esq.
      210 Otey Street
      P. O. Box 196
      Blacksburg, VA 24060

and

JOHN & JANE DOE
CERTIFICATE HOLDERS I-M
FREMONT HOME LOAN TRUST 2006-B

      SERVE: Secretary of the Commonwealth
      Service of Process Department
      Post Office Box 2453
      Richmond, VA 23218

and

JACK & JILL DOE
CERTIFICATE HOLDERS I-M

      SERVE: Secretary of the Commonwealth
      Service of Process Department
      Post Office Box 2453

Richmond, VA 23218

and

QUI CHI DOE
Association, corporations/entities I-M

> SERVE: Secretary of the Commonwealth
> Service of Process Department
> Post Office Box 2453
> Richmond, VA 23218,

Defendants.

## COMPLAINT

COMES NOW, the Plaintiff, Jenny Zambrano, by and through counsel, and for her Complaint states as follows:

## PARTIES

1. Plaintiff is a resident of the Commonwealth of Virginia, and is the lawful and sole title holder of 8033 Lomond South Drive, Manassas, VA 20110 (hereinafter, the "Property").

2. Defendant Fremont Investment & Loan Corporation (hereinafter "Fremont") is a California corporation whose principal place of business is located in California. Defendant Fremont is authorized to and regularly does transact business in the Commonwealth of Virginia, including originating mortgages on real property in the Commonwealth, specifically including the Property.

3. Defendant HSBC Bank USA, N. A. as Trustee, etc. (hereinafter "HSBC"), upon information and belief is a federally chartered bank, whose principal place of business is located in New York City, New York. Defendant HSBC regularly transacts business in the Commonwealth of Virginia including buying, selling and/or securitizing mortgages on property located in the Commonwealth, specifically including the Property.

4. Defendant Fremont Home Loan Trust 2006-B (hereinafter "FHLT 2006-B") is an unincorporated association formed under the laws of New York, whose principal place of business, upon information and belief, is located in California. FHLT 2006-B does business in the Commonwealth of Virginia, including buying, selling and/or securitizing mortgages on property located in the Commonwealth, specifically including the Property.

5. Defendant Litton Loan Servicing LP (hereinafter "Litton") is a limited partnership existing and organized under the laws of the State of Delaware. Defendant Litton's principal place of business is located in Delaware. Defendant Litton is licensed to and regularly does transact business in the Commonwealth of Virginia including buying, selling, securitizing and/or servicing mortgages on property located in the Commonwealth, specifically including the Property.

6. Defendant Wells Fargo Bank, N.A. (hereinafter "Wells Fargo") is a federally chartered bank. Upon information and belief, Defendant Wells Fargo's principal place of business is located at San Francisco, CA. Defendant Wells Fargo regularly transacts business in the Commonwealth of Virginia including buying, selling, servicing and/or securitizing mortgages on property located in the Commonwealth, specifically including the Property.

7. Defendant Glasser & Glasser, P.L.C. (hereinafter "G&G") is a professional limited corporation existing and organized under the laws of the Commonwealth of Virginia. Defendant G&G's principal place of business is located in Norfolk, VA. Defendant G&G is licensed to and regularly does transact business in the Commonwealth of Virginia.

8. Defendant Nectar Projects, Inc. (hereinafter "Nectar Projects") is a Virginia corporation. Defendant Nectar Projects' principal place of business is located in Purcellville, VA. Defendant is licensed to and regularly does transact business in the Commonwealth of Virginia.

9.   Defendant Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS"), is a Delaware corporation.  MERS' principal place of business is located in Reston, VA. Defendant MERS is licensed to and regularly does transact business in the Commonwealth of Virginia, including the electronic registration and transfer of mortgages, specifically including the Property.

10. Defendant Long & Neyhart, P.C. (hereinafter "L&N") is a professional corporation existing and organized under the laws of the Commonwealth of Virginia.  Defendant L&N's principal place of business is located in Blacksburg, VA.  Defendant L&N is licensed to and regularly does transact business in the Commonwealth of Virginia.

11. Plaintiff is unaware of the true number of, names of, and capacities of all defendants sued herein as JOHN & JANE DOE Certificate Holders, I-M inclusive, for the first trust promissory notes assigned to FREMONT HOME LOAN TRUST 2006-B Certificates, and therefore sues these defendants by such fictitious names.  Plaintiff(s) will amend this complaint to allege their true names and capacities when ascertained.

12. Plaintiff is unaware of the true number of, names of, and capacities of all defendants sued herein as JACK & JILL DOE Certificate Holders, I-M inclusive, for the second trust promissory notes assigned to the Second Trust Home Equity/Second Trust Loan Trust, I-M inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff(s) will amend this complaint to allege their true names and capacities when ascertained.

13. Plaintiff is unaware of the true number of, names of, and capacities of all defendants sued herein as QUI & CHI DOE, I-M inclusive, who may have an interest in the real property which is the subject of this Complaint as an association, corporation or entity, and therefore sues these defendants by such fictitious names.  Plaintiff(s) will amend this complaint to allege their true names and capacities when ascertained.

6

## JURISDICTION AND VENUE

14. This Court may exercise personal jurisdiction over Defendants in this action because they transacted business, including the transactions at issue in the present matter, within the Commonwealth of Virginia.

15. Venue is appropriate in this Court pursuant to Virginia code 8.01-261(3)(b) because this suit concerns real property located in Prince William County, Virginia.

## FACTS

16. On May 17, 2006, Plaintiffs purchased the Property located at 8033 Lomond South Drive, Manassas, VA 20110.

17. To effectuate the purchase, Plaintiffs executed two (2) promissory notes and two (2) deeds of trust as security interests on the property.

18. At closing, Plaintiffs signed a First "Deed of Trust" and First Promissory Note, which named Fremont as Lender, L&N as Trustee, and MERS as Beneficiary.

19. The First Promissory Note was for the amount of $ 329,600.00

20. The Second Promissory Note was for the amount of $ 82,400.00

21. The total amount of debt between the first and the second promissory notes and their respective deeds of trust liens equaled $412,000.00

22. After executing the loan documents, Plaintiff began paying her loan payments to Fremont.

23. Plaintiff is the owner and sole title-holder of the Property.

24. In 2008, Plaintiff began receiving demands for payment and threats of foreclosure from Defendants Nectar Projects, substitute trustee, G&G, Sole Acting Substitute Trustee, and Litton.

25. Upon information and belief, servicing of the subject first trust loan was transferred to Defendant Litton on or about June 4, 2008.

26. Plaintiff does not know if the "servicing" of the second trust loan was also transferred to Litton on or about June 4, 2008.

27. Upon information and belief these demands were sent on behalf of Defendant Wells Fargo, as Investor and Trust Administrator, jointly and severally, and/or HSBC Bank USA, N.A., as Trustee, under the Pooling and Servicing Agreement dated August 1, 2006, Fremont Home Loan Trust 2006-B.

28. Defendants Wells Fargo, HSBC, and Litton have no authority to enforce the obligation under the First Trust Note and/or the First Deed of Trust.

29. Defendants Nectar Projects, "substitute trustee," and G&G, "Sole Acting Substitute Trustee," and Litton, by and through G&G, in violation of the Fair Debt Collections Practices Act and/or extortion laws, sent a number of communications to Plaintiff demanding payment, declaring default and acceleration on the First Trust Note, and threatening Plaintiff with foreclosure if she failed to pay, when none of these Defendants had any right to enforce any alleged obligation of Plaintiff to Fremont.

30. Plaintiff alleges that each of the Defendants' claim of interest in the property, including Defendant MERS, is adverse to those of Plaintiff and that Defendants are without standing and legal authority to exercise any claim on the subject property, and that such claims, if any, are subject to being "quieted."

31. Upon information and belief, Defendants, including MERS, have no legal or equitable right, claim or interest in said real property as the obligation has been extinguished, has been satisfied, is void, or has been split from the Deed of Trust resulting in an unsecured Note or obligation, voiding the security interest in the Property.

32. Defendant G&G, by letter dated April 1, 2009, advised Plaintiff that her home would be foreclosed on April 15, 2009, at 12:30 pm.

33. Plaintiff, through her counsel and through separate letters, sent a Qualified Written Request ("QWR") to Defendant on September 19, 2008, pursuant to Section 6 of the Real Estate Settlement Protection Act Title 12 U.S.C. 2605 ("RESPA") and a Notice of Validation under the authority of the Fair Debt Collection Practices Act ("FDCPA") Title 15 U.S.C. 1692 (g) requesting information to demonstrate that Defendant Litton has or had a valid interest in the first trust loan.

34. Defendant Litton's response to the QWR was entirely unresponsive as it failed to identify the true party in interest or noteholder.

35. On or about April 15, 2009, Defendants foreclosed on the subject property.

36. Defendants, in violation of their fiduciary and impartial obligations under the deeds of trust purportedly sold the subject property at the April 15, 2009, foreclosure for the sum of $92,500.00.

37. The purported "purchaser" of the property at foreclosure was Defendant HSBC.

38. Although real estate values have come down, at the time the foreclosure took place the property at an estimated value of $262,500 in the market place. See Zillow.com for reference of market values.

39. Thus, with the presumptively valid foreclosure, the Defendants "purchased" a house worth $262,500, with liens exceeding $412,000, for less than 25% of the outstanding loan obligations or less than half (50%) of the property's current fair market value.

40. Clearly, instead of looking out for the best interests of all involved in an impartial manner, Defendant Glasser & Glasser in a clear breach of its fiduciary obligations, only looked

out for the best interests of Defendants Wells Fargo, HSBC, FHLT 2006-B, Litton, MERS, JOHN & JANE DOE Certificate Holders, I-M inclusive, and Qui & Chi Doe.

41. Upon information and belief, despite the appearances that the first trust foreclosing entity may have received less than what it had outstanding, the lower purchase price allows it to request full payment of its default balance from credit enhancement provisions in its mortgage pool agreement.

42. By proceeding with the aforementioned demands for payment, threats of foreclosure, and actual foreclosure, Defendants Wells Fargo, HSBC, FHLT 2006-B, Litton, Nectar Projects and G&G are, and were at all times material herein, in violation of the FDCPA and engaging in extortion by demanding money from Plaintiff when no debt is owed.

43. Once Plaintiff refused to pay, Defendants foreclosed on Plaintiff's Property.

44. By proceeding with the aforementioned demands for payment Defendants Wells Fargo, HSBC, FHLT 2006-B, Litton, Nectar Projects and G&G engaged in extortion by demanding money from Plaintiff when no debt was owed or, in the alternative, the security interest was unenforceable.

45. Defendants Nectar Projects and G&G, as substitute trustees, are in breach of their fiduciary duty to Plaintiff to remain impartial as required by Virginia law.

46. The actions of, and extortion by, the Defendants Wells Fargo, HSBC, FHLT 2006-B, Litton, Nectar Projects and G&G, will result in significant harm to the Property of Plaintiff - the title to her property - unless the foreclosure that took place on April 15, 2009 is declared void by the Court.

47. Plaintiff disputes any debt is owed to Defendant Wells Fargo, HSBC, FHLT 2006-B, Nectar Projects, Fremont, Litton or G&G or any other Defendant.

48. On or about June 5, 2009, Defendant G&G filed an action on behalf of HSBC for unlawful detainer in the General District Court of Prince William County against Plaintiff, seeking possession of the subject Property following the unlawful foreclosure of said property.

49. Defendant G&G filed a Bill of Particulars in support of said action.

50. Defendant filed an Answer contesting the validity of the foreclosure sale.

51. Trial was held on Friday, July 24, 2009, before the General District Court of Prince William County.

52. At trial, Defendant G&G entered a clerk certified copy of the Deed of Foreclosure Sale into evidence.

53. Pursuant to VA Code §8.01-389, Defendant G&G on behalf of HSBC asserted it was entitled to certain presumptions, specifically, that the representations of the Trustee's Deed of Sale were true and accurate statements, and, therefore, presumptively true and valid in all respects.

54. Plaintiff, the defendant in that action, contested the authority of the foreclosing entity to take the property to foreclosure. See VA Code §8.01-150.

55. Plaintiff was not "trying title," contrary to Defendant G&G's assertion. Rather, Plaintiff was alleging that Defendant HSBC and/or Defendant G&G had no authority to invoke the power of sale or remove and appoint a substitute trustee under the Deed of Trust.

56. Simply put, it was Plaintiff's position that, if the substitute trustee who conducted the foreclosure had no authority to act, then the Trustee's Deed of Sale is void – whether or not a certified copy of the Trustee's Deed of Sale is provided to the General District Court.

57. The General District Court held that pursuant to VA Code §8.01-389, it had no authority to "try title" in the General District Court in light of the certified copy of the Deed of Sale.

58. Further, the General District Court Judge determined that title is a matter for the Circuit Court, and granted judgment for possession to Defendant HSBC. There were no monetary damages in the case.

59. Following the ruling by the General District Court, counsel for Plaintiff requested that the General District Court Judge waive bond to address legitimate and substantive issues of law and equity at the Circuit Court level.

60. The General District Court Judge acknowledged that legitimate and substantive issues of law and equity existed during the trial, but such issues had to be raised before the Circuit Court on appeal with respect to "the authority of the foreclosing entity to foreclose;" or as the General District Court saw it, issues with respect to "title."

61. Despite the request to waive bond, the court set a bond of $7,000.00, despite there being no evidence that continued use and occupancy damages for three months equaled that amount. See VA Code §8.01-129.

### COUNT I
### (VIOLATION OF THE FDCPA)
Fair Debt Collection Practices Act ("FDCPA")
15 U.S.C. § 1692 et seq. (2000)

62. Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 61 of the Complaint as if stated fully herein.

63. Without the authority to so act, Wells Fargo, HSBC, FHLT 2006-B, Nectar Projects, Fremont and G&G, and potentially the John & Jane Doe Certificate Holders, have engaged in practices that violate the Fair Debt Collection Practices Act, as these Defendants do not have the right or authority to enforce the obligation, or in the alternative, the obligation has been extinguished, satisfied, or has been split from the Deed of Trust resulting in an unsecured Note.

64. In the alternative, were Wells Fargo, HSBC, FHLT 2006-B, Nectar Projects, Fremont and G&G, and potentially the John & Jane Doe Certificate Holders, acting at the behest of another unknown entity (upon information and belief one of the other listed Defendants, i.e. Certificate Holders), their actions are still in violation of the FDCPA as that entity does not have the right or authority to enforce the obligation, or in the alternative, the obligation has been extinguished, satisfied, or has been split from the Deed of Trust resulting in an unsecured Note, or was acquired after an alleged declaration of default.

65.      WHEREFORE, Plaintiff respectfully requests that this court award the maximum statutory damages under Fair Debt Collection Practices Act against Defendants Wells Fargo, HSBC, FHLT 2006-B, Nectar Projects, Fremont and G&G, and potentially the John & Jane Doe Certificate Holders for each violation of the FDCPA, and award her reasonable attorney's fees, costs, and punitive damages.

## COUNT II
### (DECLARATORY JUDGMENT)
### Virginia Code Ann. §8.01-184

66. Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 65 of the Complaint as if stated fully herein.

67. Defendants have no legal or equitable right or interest in the Promissory Note and/or Deed of Trust, or in the alternative, the obligation has been extinguished, satisfied, is void, or has been split from the Deed of Trust resulting in an unsecured Note, and, consequently, enter an Order declaring the Trustee's Deed of Foreclosure void and of no effect.

WHEREFORE, Plaintiff respectfully requests that this Court declare that, as a result of the securitization process to which the Promissory Note has been subjected, the Defendants have no legal or equitable interest in the Property, have no authority to enforce the

security instrument and/or Promissory Note, and that the foreclosure was unlawful and should be set aside while voiding the Trustee's Deed of Foreclosure.

## COUNT III
### (BREACH OF FIDUCIARY DUTY)

68. Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 67 of the Complaint as if stated fully herein.

69. Defendants G&G and Nectar Projects owed the duties of impartiality and the ordinary care of a fiduciary to the Plaintiff, but each engaged in collection efforts against the Plaintiff for an alleged default under the Promissory Note.

70. G&G and/or Nectar Projects failed to perform reasonable due diligence when the request to proceed to foreclose was made by Defendant Wells Fargo, HSBC, FHLT 2006, Fremont, Litton, MERS and/or potentially the John & Jane Doe Certificate Holders, or other unknown entity in violation of their duties of impartiality and ordinary care of a fiduciary.

71. Defendants G&G and Nectar Projects have engaged in extensive efforts to collect an alleged obligation from Plaintiff and have wrongfully effectuated a foreclosure on Plaintiff's home in further violation of said duties.

WHEREFORE, Plaintiff respectfully requests that this court award her damages against Defendant G&G and/or Nectar Projects, jointly and severally, in the amount of $412,000.00, plus reasonable attorney's fees and costs.

## COUNT IV
### (QUIET TITLE)

72. Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 71 of the Complaint as if stated fully herein.

73. Plaintiff is the only party to this matter that can prove legal and equitable ownership interest in the Property.

74. Plaintiff therefore seeks a declaration that the title to the Property is vested in Plaintiff alone, free of the lien(s) of the Deed(s) of Trust, and that the Defendants herein, jointly and severally, be declared to have no estate, right, title or interest in the subject property, and, further, that said Defendants be forever enjoined from asserting any estate, right, title or interest in the Property adverse to Plaintiff herein, and award her reasonable attorney's fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order Quieting Title in the name of Plaintiff alone, and award her reasonable attorney's fees and costs.

## COUNT V
### (INJUNCTION)
Virginia Code § 8.01-620, § 8.01-622

75. Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 74 of the Complaint as if stated fully herein.

76. This action will determine the rights of the parties to the Property.

77. Defendant HSBC, by and through Defendant G&G, brought an unlawful detainer action against the Plaintiff for possession of the Property. Trial was held on July 24, 2009, at the conclusion of which judgment for possession was granted to HSBC and a bond of $7,000.00 was set by the Court.

78. If the Order of Possession is not stayed, or the execution of the writ is not stayed, Plaintiff will suffer immediate, substantial, and irreparable injury.

79. There is no other adequate remedy at law that can protect Plaintiff's rights and an injunction against the efforts to obtain possession of the property must be stayed.

WHEREFORE Plaintiff seeks an injunction staying entry of judgment for possession in the General District Court, or in the alternative, staying the writ of execution of said Court until this action may be litigated and the rights of the parties are determined by this Court.

## COUNT VI
(DUE PROCESS VIOLATION - 5TH and 14th AMENDMENTS to THE CONSTITUTION OF THE UNITED STATES OF AMERICA and SECTION 11 of ARTICLE I of THE BILL of RIGHTS of VIRGINIA)

80. Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 79 of the Complaint as if stated fully herein.

81. Pursuant to VA Code §107, and §8.01-129, to appeal an order of the General District Court, a party must pay: i) the appeal fee; ii) the writ tax; and iii) any bond set by the General District Court within ten (10) calendar days from the date of the trial and the order.

82. Thus, for Plaintiff to raise legitimate and substantive issues of law and equity, standing, or title, if the Court prefers to view it as such, she must pay $7,000.00 to the General District Court, or her appeal will not be accepted.

83. To make matters worse and further assist in the unlawful taking of a Plaintiff's property rights with her own home, there is no procedural mechanism in the judicial process in the Commonwealth of Virginia to appeal or review the imposition of the General District Court bond.

84. Further, without actually paying the bond to assert Plaintiff's right to keep her home (Plaintiff's assertions that the foreclosing entities have no standing, right or color of title to conduct their unlawful foreclosure), Plaintiff is estopped from even attempting to assert her claims in the Circuit Court or the Supreme Court of Virginia. See VA Code §16.1-109 – circuit court may increase bond, but has no statutory authority to *reduce* a bond.

85. The Fifth Amendment of the United States Constitution states, in part:

"[N]o person shall be .... deprived of life, liberty, or property, without due process of law."

The 5th Amendment is applied to the states through the 14th Amendment of the U.S. Constitution.

86. A homeowner's due process in a foreclosure situation may not be at issue in a "judicial" foreclosure jurisdiction, as state action is not involved, and the creditor must go to court to establish standing, prove debt default, failure to cure, or that it is the true party in interest having the authority to foreclose on the real property at issue.

87. A homeowner's due process in a foreclosure situation becomes an issue in the Commonwealth of Virginia as it is a "non-judicial foreclosure jurisdiction."

88. In the non-judicial foreclosure, a purported creditor with a purported security interest in real estate may foreclose on the property without having to go to court and establish standing, prove debt default, a debtor's failure to cure, that it is the true party in interest having the authority to foreclose on the real property at issue, and without having to prove that its alleged security interest has not already been satisfied or cancelled.

89. As distinguished from a judicial foreclosure jurisdiction, in Virginia, all a putative real estate foreclosing entity or putative lender must do is comply with a set of procedures established by statute.

90. It is precisely these statutory provisions for non-judicial foreclosures that constitute "state action" in Virginia.

91. On argument against the imposition of a bond to assert legitimate and substantive issues of law and equity at the Circuit Court level, the General District Court's response when ordering the imposition of bond is that the statute requires it, that the legislature has spoken, and that a non-judicial foreclosure process does not constitute enough state action to be viewed as an

17

unconstitutional deprivation of due process rights guaranteed to each individual under the 5th and 14th Amendments to the United States Constitution and Article I, § 11 of Virginia's Bill of Rights, respectively.

92. Respectfully, Plaintiff submits that the General Assembly and the Courts are taking a very narrow view of the process and are not recognizing the significance or repercussions of such non-judicial process.

93. Using a circuitous reasoning, the General Assembly and the Courts are limiting their analysis of the constitutionality of the non-judicial foreclosure process in Virginia to the mere fact that it is a matter of private contract.

94. In reality and when considering the totality of the circumstances, homeowners on a daily basis in the Commonwealth of Virginia are being deprived of their constitutional protection against denial of due process not only during the non-judicial foreclosure process, but in the unlawful detainer process as well.

95. The first opportunity for a property homeowner to challenge the standing of the foreclosing entity is during the unlawful detainer trial.

96. Attempts at challenging the foreclosure *prior* to the scheduled foreclosure date result in the imposition of a bond, same as if it the issues were being presented or addressed at the unlawful detainer trial.

97. On several occasions, the undersigned has filed injunctions in the Circuit Court to stay foreclosure proceedings.

98. As a general rule, the Circuit Court will require the imposition of a bond to challenge a foreclosure *ab initio*, without regard to whether or not legitimate and substantive issues of law and equity exist.

99. Plaintiff requests that this Circuit Court consider the totality of the circumstances Plaintiff faces.

100.     Plaintiff's home was foreclosed through a non-judicial process pursuant to statute.

101.     Plaintiff is then sued for possession of her home by foreclosing entities that did not have any standing or authority to foreclose or demand payment of an unlawful debt, or a debt that has already been satisfied.

102.     Plaintiff wishes to contest the authority of the foreclosing entity, but Plaintiff is estopped from doing so because Plaintiff is faced with misapplication of evidentiary presumptions given to recorded documents, also pursuant to Virginia statute, which deny Plaintiff the opportunity to challenge said authority.

103.     If Plaintiff wishes to raise those substantive legal and equitable issues, Plaintiff must do so in the Circuit Court, but to get there Plaintiff must pay a $7,000.00 bond.

104.     The amount of the bond is not the issue – i.e., it does not matter if the bond is $1.00, $7.00, $700.00, or $7,000.00 as to the constitutional due process issue being raised, although the amount impacts the Plaintiff and others similarly situated as to her or their individual financial condition.

105.     Requiring a homeowner to pay *any* bond in order to raise legitimate issues of law and equity to contest an unlawful foreclosure is a violation of Plaintiff's right to Due Process in that Plaintiff's property has been "taken" and Plaintiff is provided no opportunity to challenge that "taking," which is aided by favorable statutes to the lenders drafted by the General Assembly, which constitutes state action.

106.     In light of these circumstances, there is no question that requiring a homeowner to pay a bond to challenge the authority of a party that has foreclosed on Plaintiff's

home in a non-judicial foreclosure jurisdiction is a violation of Plaintiff's 5th and 14th Amendment rights under the U.S. Constitution.

107.     Among the substantive legal and equitable issues to be decided prior to any taking of Plaintiff's real property interest in violation of the 5th Amendment is whether the appropriate foreclosing entity has actual authority to conduct or commence a non-judicial foreclosure on Plaintiff's home and whether such foreclosing entity has standing to do so.

108.     Further, in a securitized mortgage environment, the issue of whether an actual "lender" or "creditor" even exists, or has come forth, or has standing cannot even be raised in Virginia's non-judicial foreclosure process. See VA Code§8.01-150. The denial of such opportunity is a further denial of Plaintiff's rights of Due Process.

109.     As recently as March 3, 2009, the U.S. Supreme Court reiterated a court's independent obligation to ensure a party before it has standing to be there [*Summers v. Earth Island Institute*, No . 07-463 (U.S. 3/3/2009)].  Also, see, *Bender v. Williamsport Area School Dist.*, 475 U. S. 534, 541 (1986).

110.     In a non-judicial foreclosure jurisdiction, like Virginia, the foreclosing entity's standing is *presumed* – by the non-judicial process itself.

111.     Further, even when a foreclosing entity's standing is challenged and demonstrated by clear and convincing evidence that such standing does not exist, the presumed validity of their actions is again reiterated and *presumed valid* during trial at the General District Court level by an evidentiary statute, VA Code §8.01-389, which is being mis-applied throughout the Commonwealth of Virginia as a substantive law statute as opposed to a mere evidentiary statute.

112.     In unlawful detainer cases and trials, which follow a non-judicial foreclosure sale, the problems created by this "presumption of validity" are exacerbated and are

creating a tremendous waste of resources, are increasing the courts dockets, and are creating

outrageous, unfathomable, questionable and unacceptable clouds on title thoughout the

Commonwealth of Virginia.

113.     In no small way, judge's decisions that reject clear and convincing

evidence, not to mention a preponderance of the evidence, which evidence rebuts the

presumption of validity to the foreclosing entity's actions, are wrong and, more importantly,

from a legal perspective, unconstitutional.

114.     Further, judges' refusal to recognize that an evidentiary statute is being

abused and misapplied by foreclosing entities throughout the Commonwealth is an erroneous

application of the evidentiary statute dealing with clerk certified documents.

115.     Such misapplication of an evidentiary statute is depriving homeowners of

their constitutional rights to due process and constitutes a taking as a result of state action.

116.     Plaintiff and other homeowners have legitimate and substantive, legal and

equitable issues to raise with respect to an alleged *presumptively valid foreclosure*, and lose their

homes nonetheless when Plaintiffs are required to pay onerous bonds of $ 7,000.00, $ 8,000.00,

or more, on average (this seems to be the average amounts currently required in the General

District Courts).  Similarly onerous bonds are set upon granting of injunctions requested prior to

foreclosure (eg. in CL 09-6782 the court set an incredible $100,000.00 bond after granting a

petition for injunction.

117.     In the instant case, as the facts recited herein reveal, there were legitimate

and substantive legal and equitable controversies to be settled between and among the parties.

118.     Further, the proffered documents *on their face* should have been enough

to rebut the presumption of validity of the foreclosing entities' actions -- that is, to rebut the

presumption of validity provided by VA Code §8.01-389.

119.     This is so even when applying a clear and convincing standard of review to such statutorily, presumptively valid representations.

120.     The problems that will arise with respect to clouds on title as a result of the General District Court and Commissioner of Accounts upholding of these obvious-on-their face-void foreclosure deeds are immense.

121.     The cost to the County, not to mention to the Commonwealth as a whole, is unquantifiable at the moment.

122.     The "mess" and imbroglio created by these presumptively valid representations sanctioned by an evidentiary statute being misapplied as a substantive law statute will come out one conveyance deed at a time over the course of the next several years.

123.     As an example of the inherent risks involved in these situations, in another case in which the undersigned participated, the General District Court in Loudoun County, citing VA Code§8.01-389, granted possession on a foreclosure Trustee's Deed of sale which foreclosed on 266 acres of land – the *entire* community and development, as opposed to the homeowner's single one acre lot.

124.     In light of the above, Plaintiff respectfully requests that this Honorable Circuit Court stay the execution of the writ of possession, or in the alternative, stay the entry of the Order for possession, or in the alternative waive the bond imposed by the General District Court so that Plaintiff may file her notice of appeal, bring these very legitimate and substantive issues to the attention of the Court, and actually be allowed to have her day in Court.

125.     Plaintiff further requests that the issues raised in this action be brought to the attention of the Clerk of the Court and the Chief Judge hereof, in hopes that some change be implemented with respect to the General District Court's policies in applying VA Code §8.01-

389 and setting of bond to avoid the constitutional violations that are occurring daily in this Commonwealth.

126.     Plaintiff asserts that, at the very least, where the evidence presented by the foreclosing entity on its face shows that an error exists in the transfer of title, bond ought to be waived.

127.     Plaintiff has no inherent problem with having to raise "title" issues before the Circuit Court. However, Plaintiff feels strongly that once the General District Court Judge informs Plaintiff that he or she will not hear "title issues[1]," the imposition of a bond to do so is clearly unconstitutional where there is evidence to rebut the presumption created by VA Code §8.01-389.

128.     The risks of allowing this practice to continue are clear: foreclosing entities with no standing or authority to do so will unlawfully foreclose on 266 acres of land instead of one acre; they will foreclose relying on documents in the land records which are untruthful and void on their face (eg. CL 09-7301); the limited resources of the Commonwealth's Courts will be unnecessarily drained; putatively authorized foreclosing entities will foreclose on real property despite there existing obvious defects in their Trustee's Deed of Sale or the documents supporting same, which cloud title for future persons; and real cases and controversies will be abandoned as homeowners are unable to pay the statutorily required bond.

WHEREFORE, Plaintiff respectfully requests that this Court waive the imposition of Bond, or in the alternative stay the entry of judgment for possession in the underlying unlawful detainer action, or in the alternative, stay the execution of the writ. Plaintiff also demands a Jury Trial on all issues raised by this Complaint, and further respectfully requests that this Complaint

---

[1] Plaintiff disagrees with the premise that the GDC cannot "hear title" and cannot seem to find any statutory authority for this specific claim, despite suggestion from many GDC judges that such statutory authority exists. Plaintiff concludes that the Court's are solely relying on VA Code§8.01-389(C), which, when read correctly, provides an evidentiary standard for *proving title*.

be presented to the Clerk of the Court and to the Chief Judge hereof, for immediate review and

consideration given the very serious constitutional rights at issue.

JENNY ZAMBRANO

By Counsel,

Brown, Brown & Brown, P.C.

By: _____

Christopher E. Brown, VSB#39852
R. Michael Smith, VSB#13493
6269 Franconia Rd
Alexandria, Virginia 22310
703.924.0223
Fax 703.924.1586
brownfirm@lawyer.com
*Counsel for Plaintiff*

24