## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| JENNY ZAMBRANO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:09-cv-000996 (CMH) |
| | ) | |
| HSBC BANK USA, N.A., as Trustee under | ) | |
| the Pooling and Servicing Agreement | ) | |
| dated August 1, 2006, Fremont Home | ) | |
| Loan Trust 2006-B, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants HSBC Bank USA, N.A., as Trustee under the Pooling and Servicing

Agreement dated as of August 1, 2006, Fremont Home Loan Trust 2006-B ("HSBC"); Litton

Loan Servicing LP ("Litton"); Wells Fargo Bank, N.A., as Master Servicer on behalf of Fremont

Home Loan Trust 2006-B;[1] Mortgage Electronic Registration Systems, Inc.; Glasser and Glasser,

P.L.C. ("Glasser & Glasser"); John & Jane Doe Certificate Holders I-M Fremont Home Loan

Trust 2006-B; Jack & Jill Doe Certificate Holders I-M; and Qui Chi Doe Association,

corporations/entities I-M (collectively, the "Defendants"), by counsel, pursuant to Fed. R. Civ. P.

56(b), submit this memorandum in support of their motion for summary judgment.

---

[1] Plaintiff inaccurately named "Wells Fargo Bank, N.A., as Investor, Individually and as Trust Administrator, Jointly and Severally" as a party defendant in this action.  Wells Fargo Bank, N.A., *as Master Servicer on behalf of Fremont Home Loan Trust 2006-B* is the proper party defendant.

## INTRODUCTION

Plaintiff seeks to void the April 15, 2009 foreclosure and sale of her residential property (the "Property").  Plaintiff does not dispute she entered into a loan (the "Loan") evidenced by a promissory note (the "Note") and secured by a deed of trust (the "Deed of Trust") placing a security interest in the Property.  (Am. Compl., ¶¶ 28-33).  Nor does she dispute that she stopped making her repayments as required under the Note and Deed.  (Am. Compl., ¶ 71). Plaintiff has not and cannot allege in good faith that the secured Note has been paid off, released, or canceled.  Instead, she asserts two erroneous claims against Defendants.[2]  First, Plaintiff alleges in her quiet title claim that she is "the only party to this matter that can prove [a] legal and equitable ownership interest in the Property."  (Am. Compl., ¶ 173).  Second, Plaintiff alleges in her declaratory judgment claim that the Defendants "conducted a foreclosure proceeding against the Plaintiff in violation of law and contract."  (Am. Compl., ¶ 103).

Plaintiff's quiet title claim fails because the Defendants owned the debt obligation and possessed the original Note and Deed of Trust, and, therefore, were authorized to foreclose on the Property upon her default.  Specifically, the originator Fremont Investment & Loan Corporation ("Fremont") negotiated ownership and possession of the Note to HSBC as trustee for Fremont Home Loan Trust 2006-B (the "Trust").  HSBC retained possession of the original Note and Deed of Trust on behalf of the Trust until Litton, as loan servicer, produced the original loan documents to the substitute trustee Glasser & Glasser during the foreclosure process. Because Defendants owned and possessed the Note upon which Plaintiff defaulted, the Defendants were authorized to invoke the power of sale pursuant to the Deed of Trust.  After the foreclosure sale, Glasser & Glasser executed and recorded a Trustee's Deed conveying

[2] On November 9, 2009, the Court dismissed fourteen of the sixteen claims asserted by Plaintiff in her Amended Complaint.

ownership of the Property from Plaintiff to HSBC.  Therefore, contrary to Plaintiff's allegations, Plaintiff has no legal or equitable ownership interest in the Property.

Plaintiff's declaratory judgment claim fails for two reasons.  First, the foreclosure has already happened, and, therefore, declaratory relief is improper.  Second, Defendants followed the proper procedures to foreclose and sell the Property pursuant to Virginia's foreclosure statutes and the clear terms of the Deed of Trust.  They properly notified Plaintiff of her default and the loan acceleration.  They properly notified Plaintiff of the date, time, and location of the trustee's sale and advertised the foreclosure in a newspaper of general circulation. Plaintiff's claim that the foreclosure conducted by the Defendants somehow violated the law or any contract is completely without merit and must be dismissed.

Plaintiff has no evidence to dispute the verified statements and documents attached to this memorandum.  Instead, Plaintiff relies on unsupported and erroneous legal theories that have already been rejected by this Court in recent rulings.  The Court should grant Defendants' motion for summary judgment and dismiss Plaintiff's claims with prejudice.

UNDISPUTED FACTS

**I.**   **Origination and Ownership of the Loan**

    **A.**   **Fremont originated the Loan.**

    1.   On May 17, 2006, Plaintiff entered into the Loan with Fremont evidenced by the Note and secured by the Deed of Trust.  (Am. Compl., ¶¶ 28-33).  Copies of the Note and Deed of Trust are attached hereto as **Exhibits A** and **B**.  The undersigned counsel retains possession of the original Note and Deed of Trust bearing Plaintiff's original ink signatures at his office in Richmond, Virginia.  These original documents are available at the request of the Court or Plaintiff's counsel.

    2.   The Deed of Trust placed a security interest in the Property.  (Am. Compl., ¶ 29); (Ex. B, generally).

    **B.**   **Fremont negotiated the Note to HSBC as trustee of the Trust and transferred possession of the Note and Deed of Trust to HSBC.**

    3.   In the Note, Plaintiff explicitly agreed that the Note was a fully negotiable instrument, stating "I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"  (Ex. A, page 1).

    4.   In the Deed of Trust, Plaintiff agreed that the "Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."  (Ex. B, page 12).

    5.   On or about August 1, 2006, Fremont negotiated ownership and possession of the Note to HSBC, as evidenced by paragraph 3 of the Declaration of Judy A. Tidwell, Senior Litigation Processor for Litton's legal department, attached hereto as **Exhibit C** (the "Litton Dec., ¶ ___).

4

6.      Fremont endorsed the Note "in blank" by stamping on the back of the Note "Pay to the Order of _____ without recourse."  (Ex. A, page 5).[3]  The endorsement was signed by Doug Pollock, Assistant Vice President for Fremont.[4]  (Ex. A, Page 5).

7.      On or about August 1, 2006, Fremont delivered the original Deed of Trust bearing Plaintiff's ink signatures to HSBC.  (Litton Dec., ¶ 4).

8.      On behalf of the Trust, HSBC retained possession of the original Note and Deed bearing Plaintiff's original ink signatures from the date they were transferred by Fremont until production of the original documents to Glasser & Glasser in relation to the foreclosure and trustee's sale at issue in this action.  (Litton Dec., ¶ 5).

## II.    Plaintiff defaulted on her payment obligations under the Note on August 1, 2007, and has continued to be in default since that date.

9.      Plaintiff admits that she "refused to pay" her repayment obligations under the Note. (Am. Compl., ¶ 71).

10.     On August 1, 2007, Plaintiff defaulted on her loan obligations by failing to make her mortgage loan payment.  The last mortgage loan payment made by Plaintiff was on July 1, 2007.  (Litton Dec., ¶ 6).

11.     To date, Plaintiff has continued to be in default (i.e., failed to pay her mortgage payment) since August 1, 2007.  (Litton Dec., ¶ 6).

12.     On May 7, 2008, Fremont transferred its rights and obligations as loan servicer for the loan at issue to Litton.  (Litton Dec., ¶ 7); see Am. Compl., ¶ 53 (alleging "upon information and belief" that loan servicing rights were transferred to Litton).

---

[3] The endorsement is located on the back of page 4 of the Note.  For the purposes of this memorandum, counsel for the Defendants has copied the back of page 4 and inserted it as page 5 to illustrate that the Note has been endorsed in blank.
[4] Pursuant to Fed. R. Evid. 902(9), commercial paper and signatures thereon are self authenticating.  Therefore, Plaintiff cannot question the validity of Fremont's blank endorsement.

**III.     Defendants properly foreclosed and sold the Property on April 15, 2009.**

13.     On December 4, 2008, Litton gave Plaintiff notice of her default and HSBC's

intent to accelerate payment of the Loan pursuant to the Note and Deed.  (Litton Dec., ¶ 8, Ex. 1).

14.     Plaintiff did not cure her default by the date specified in the Notice of Default.

(Litton Dec., ¶ 6).

15.     On March 13, 2009, HSBC, through its loan servicer Litton, appointed Glasser &

Glasser as substitute trustee pursuant to the Deed.  (Litton Dec., ¶ 9, Ex. 2).

16.     HSBC instructed Glasser & Glasser to invoke the power of sale pursuant to the

Deed of Trust and Virginia foreclosure law, as evidenced by paragraph 4 of **Exhibit D**, the

Declaration of Richard A. Knee, Supervising Attorney for the foreclosure department of Glasser

& Glasser (the "Glasser Dec., ¶ ___").

17.     On April 1, 2009, Glasser & Glasser notified Plaintiff of the trustee's sale

scheduled for April 15, 2009.  (Glasser Dec., ¶ 5, Ex. 2").

18.     On April 6 and 13, 2009, Glasser & Glasser advertised the trustee's sale of the

Property scheduled for April 15, 2009 in the *Washington Examiner* newspaper.  (Glasser Dec., ¶

6, Ex. 3).

19.     On April 15, 2009, Glasser & Glasser foreclosed upon and sold the Property via a

trustee's sale.  (Am. Compl., ¶ 163); (Glasser Dec., ¶ 7, Ex. 4).

20.     HSBC, by and through its loan servicer Litton, produced to Glasser & Glasser the

original Note and original Deed of Trust bearing Plaintiff's original ink signatures and Fremont's

blank endorsement.  (Litton Dec., ¶ 12); (Glasser Dec., ¶ 8).

21.     On May 19, 2009, Glasser executed the Trustee's Deed conveying ownership of

the Property from Plaintiff.  (Glasser Dec., ¶ 9, Ex. 4).

22.     On July 13, 2009, Glasser recorded the Trustee's Deed in the Prince William County Land Records.  (Glasser Dec., ¶ 9, Ex. 4).

23.     Plaintiff filed this action on July 31, 2009, approximately three-and-a-half months after the foreclosure and trustee's sale.


### PROCEDURAL POSTURE

Plaintiff originally filed this action in the Circuit Court for the County of Prince William, Virginia on July 31, 2009.  On September 3, 2009, Defendants removed the action to this Court.  On September 23, 2009, Plaintiff amended her complaint to assert sixteen separate claims for (1) violation of the Truth in Lending Act; (2) violation of the Fair Debt Collection Practices Act; (3) violation of the Real Estate Settlement Procedures Act; (4) declaratory judgment -- wrongful foreclosure; (5) unjust enrichment; (6) "illegal gambling;" (7) "illegal gambling accessories;" (8) "pyramid scheme;" (9) violation of Virginia's false advertising statutes; (10) criminal violation of Virginia's sales statutes; (11) fraud; (12) negligent supervision; (13) breach of fiduciary duty; (14) quiet title; (15) injunction; and (16) violation of Plaintiff's due process rights under the United States and Virginia Constitutions.  On November 9, 2009, the Court dismissed fourteen of Plaintiff's claims.  (Docket No. 30).  Defendants' motion for summary judgment addresses the two remaining claims for quiet title (Am. Compl., ¶¶ 172-74) and "declaratory judgment -- wrongful foreclosure" (Am. Compl., ¶¶ 102-04).

STANDARD OF REVIEW

Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56(b). Summary judgment should be entered against a party "who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In such situations, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. As the Fourth Circuit has held:

> Though the burden of proof rests initially with the moving party, when a motion for summary judgment is made and supported as provided in Rule 56, the nonmoving party must produce "specific facts showing that there is a genuine issue for trial," rather than resting upon the bald assertions of his pleadings.

*Ross v. Comms. Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985) (internal citations omitted). Indeed, trial judges have an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citations omitted).

To survive summary judgment, Plaintiff must present "'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). It is not enough "simply [to] show that there is some metaphysical doubt as to the material facts." *Id.* at 586. Nor is the "mere existence of a scintilla of evidence" or "unsupported speculation" adequate to defeat a summary judgment motion. *Baber v. Hospital Corp. of Am.*, 977 F. 2d 872, 875 (4th Cir. 1992). The non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case" to avoid summary judgment. *Lujan v.*

*National Wildlife Federation*, 497 U.S. 871, 883 (1990); *Davis v. Thoman Motel Corp.*, 900 F.2d 28, 31 (4th Cir. 1990).  "A trial, after all, is not an entitlement.  It exists to resolve what reasonable minds would recognize as real factual disputes." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

Here, Plaintiff's bare assertions that (1) "Plaintiff is the only party to this matter that can prove legal and equitable ownership interest in the Property" (Am. Compl., ¶ 173), and (2) Defendants "conducted a foreclosure proceeding against the Plaintiff in violation of law and contract" (Am. Compl., ¶ 103) are completely contradictory to Virginia's foreclosure laws and the undisputed facts and verified statements and documents attached to this memorandum. Plaintiff cannot provide any evidence disputing Defendants' legal and equitable ownership of the Property.  Indeed, the evidence shows that the Defendants, not Plaintiff, are the only parties that can demonstrate an equitable and legal ownership of the Property.  Nor Plaintiff can submit any evidence showing that Defendants violated any law or breached any contract in conducting the foreclosure.  Accordingly, summary judgment should be granted in favor of Defendants.

**ARGUMENT**

I.    **Plaintiff's quiet title claim fails based on (i) Defendants' ownership and possession of the secured Note; and (ii) Plaintiff's default on her mortgage payments.**

   A.    **Defendants owned the Loan and possessed the original Note and Deed.**

Plaintiff claims that she is the "only party that can prove [a] legal and equitable ownership interest in the Property." (Am. Compl., ¶ 173). There is no dispute that Plaintiff entered into the loan evidenced by the Note and secured by the Deed of Trust placing a security interest in the Property. (Am. Compl., ¶¶ 28-33). The originating lender was Fremont. (Am. Compl., ¶ 30). After origination, Fremont negotiated the Note to HSBC as trustee for the Trust by endorsing the Note "in blank" and delivering physical possession of the original Note to HSBC. (Ex. A, page 5); (Litton Dec., ¶ 3). Persons entitled to enforce a negotiable instrument include the "holder of the instrument." Va. Code § 8.3A-301. As the originating lender, Fremont was the holder of the Note and entitled to enforce the debt obligation against Plaintiff. Fremont's "blank indorsement" essentially converted the Note into "bearer paper." Va. Code § 8.3A-205(b). "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated *by transfer of possession alone* until specially indorsed." *Id*. (emphasis added). Thus, Fremont's blank endorsement and delivery of the original Note to HSBC rendered HSBC a holder of the instrument entitled to enforce its terms against Plaintiff.

At the same time, Fremont delivered the original Deed of Trust to HSBC. (Litton Dec., ¶ 4). However, even if Fremont had not conveyed physical possession of the Deed of Trust to HSBC, the negotiation of the Note from Fremont to HSBC carried with it the equitable security of the Deed of Trust. *See, e.g., Williams v. Gifford*, 139 Va. 779, 784 (1924) ("[I]n Virginia, as to common law securities, the law is that both deeds of trust and mortgages are regarded *in equity* as mere securities for the debt and whenever the debt is assigned the deed of

10

trust or mortgage is assigned or transferred with it."); *Stimpson v. Bishop*, 82 Va. 190, 200-01

(1886) ("It is undoubtedly true that a transfer of a secured debt carries with it the security

without formal assignment or delivery."). Therefore, the Note continued to be secured and

HSBC was entitled to enforce the terms of the Deed of Trust, including the power to invoke the

sale of the Property upon Plaintiff's default.

Indeed, this Court recently ruled in a nearly identical claim that the holder of a

blank endorsed note was entitled to enforce the note pursuant to the deed of trust and foreclose

on the property at issue. *Areebuddin v. OneWest Bank, F.S.B.*, No. 1:09-cv-1083 (E.D. Va.

March 24, 2010).[5]  Like the Plaintiff, the claimant in *Areebuddin* claimed that the foreclosing

entities lacked authority to foreclose because they were mere holders of the note.  Like the Note

at issue here, the note in *Areebuddin* contained a blank endorsement.  The Court ruled:

> [I]f an instrument has a blank endorsement, it is considered
> "payable to bearer," and it may be negotiated by transfer of
> possession alone.  *See* Va. Code §§ 8.3A-201(b) & 8.3A-205.  In
> this case, the face of the Note shows that the Note has a blank
> endorsement. . . . Accordingly, it may be negotiated by a simple
> change in possession and enforced by its current holder, OneWest.

(*Areebuddin*, Ex. E, page 5).  Therefore, the Court ruled that the foreclosing entity had authority

to invoke the power of sale under the deed of trust.  (Ex. E, pages 6-7) (citing *inter alia Williams*

*v. Gifford*, *supra*, and rejecting Plaintiff's theory regarding a "split" between the note and deed).

The same analysis applies here.

The issue of whether Defendants had authority to foreclose on the Property is

simple.  HSBC owned and possessed the original Note and, therefore, was a holder entitled to

enforce the Note.  As a holder of the Note, HSBC enjoyed the security of the Deed of Trust, and,

---

[5] Counsel for Plaintiff represented the claimant in *Areebuddin*.  A copy of the Court's March 24, 2010 ruling in
*Areebuddin* is attached hereto as **Exhibit E**.

therefore, was authorized to initiate the foreclosure on the Property through the trustee pursuant to the Deed of Trust and Virginia's foreclosure laws.

**B.      Plaintiff defaulted on her repayment obligations under the Note.**

There is no dispute that Plaintiff stopped paying her mortgage payments.  In fact, Plaintiff declares that she "refused to pay" her obligations under the Note.  (Am. Compl., ¶ 71). The attached declaration from Litton's authorized representative confirms that Plaintiff is, in fact, in default on her repayment obligations under the Note.  (Litton Dec., ¶ 6).  Plaintiff defaulted on the Note by missing the payment due on August 1, 2007.  (Litton Dec., ¶ 6).  Plaintiff has remained in default for over two-and-a-half years.  (Litton Dec., ¶ 6).

Virginia Code § 55-59(7) states the authority of the trustee to foreclose and sell property provided as security for a loan after the borrower is in default.

> In the event of default in the payment of the debt secured, or any part thereof, at maturity, or in the payment of interest when due, or of the breach of any of the covenants entered into or imposed upon the grantor, then at the request of any beneficiary the trustee shall forthwith declare all the debts and obligations secured by the deed of trust at once due and payable and may take possession of the property and proceed to sell the same at auction . . . .

Furthermore, in the Deed of Trust, Plaintiff explicitly agreed that the noteholder would have authority to invoke foreclosure and sell the property if she did not cure her default. "If the [Plaintiff's] default is not cured on or before the date specified in the [acceleration] notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law."  (Ex. B, page 13).

After the April 15, 2009 trustee's sale, Glasser & Glasser executed the attached Trustee's Deed on May 19, 2009 conveying ownership of the Property to HSBC.  (Glasser Dec.,

¶ 9, Ex. 4).  On July 13, 2009, Glasser & Glasser recorded the Trustee's Deed in the land records

for Prince William County.  (Glasser Dec., ¶ 9, Ex. 4).  Therefore, Plaintiff's claim of quiet title

is without merit.  Indeed, Plaintiff, not Defendants, is unable to prove any ownership interest in

the Property since her interest has been properly transferred to HSBC pursuant to Virginia's

foreclosure laws and the terms of the Deed of Trust.  Plaintiff's quiet title claim must be

dismissed with prejudice.

II.    **Plaintiff's declaratory judgment claim for "wrongful foreclosure" fails because (i) the foreclosure has already occurred, and, therefore, declaratory relief will serve no useful purpose; and (ii) the Defendants followed the proper procedures for foreclosure under the law and Deed of Trust.**

   A.    **Declaratory relief is inappropriate because the foreclosure already occurred.**

Plaintiff seeks a declaration from the Court ruling that (i) Defendants "conducted

a foreclosure proceeding against the Plaintiff in violation of law and contract;" and (ii) the

"initiation of the foreclosure" was "negligent, wanton or intentional."  (Am. Compl., ¶¶ 103-04).

The foreclosure, however, occurred on April 15, 2009 -- three and a-half months before Plaintiff

filed this action.  (Am. Compl., ¶ 163).  As this Court recently ruled in a nearly identical case,

declaratory relief is unavailable after the foreclosure has occurred.  *Horvath v. Bank of New York,*

*N.A.*, Civil Action No. 1:09-cv-01129 (E.D. Va. Jan. 29, 2010).[6]

The claimant in *Horvath* asserted the same declaratory judgment claim asserted

by the Plaintiff here, seeking to void the foreclosure after it had occurred.  The Court dismissed

all of the *Horvath* claimant's claims, including his claim for declaratory relief.  The Court ruled:

> Declaratory relief is reserved for forward looking actions and is
> appropriate if the "relief sought (i) will serve a useful purpose in
> clarifying and settling the legal relations in issue, and (ii) will
> terminate and afford relief from the uncertainty, insecurity, and

---

[6] Counsel for Plaintiffs represented the claimant in the *Horvath*.  A copy of the Court's January 29, 2010 opinion in *Horvath* is attached hereto as **Exhibit F**.

> controversy giving rise to the proceeding." *Douros v. State Farm Fire and Casualty Co.*, 508 F. Supp. 2d 479, 482 (E.D. Va. 2007) . . . . Because the foreclosure on the Property has already occurred, declaratory relief will serve no useful purpose, particularly in light of the Court's ruling herein with respect to Horvath's other substantive claims.

(*Horvath*, Ex. F, page 2). The same analysis applies in this action. Plaintiff filed her claim after the foreclosure occurred and after Glasser & Glasser recorded the Trustee's Deed. Accordingly, her claim for declaratory relief fails as a matter of law and must be dismissed.

### B.     Plaintiff's declaratory judgment claim fails because the Defendants followed the proper procedures in foreclosing on the Property.

Plaintiff's declaratory judgment claim is also contrary to the facts. Plaintiff asserts that the Defendants "conducted a foreclosure proceeding against the Plaintiff in violation of law and contract." (Am. Compl., ¶ 103). Under Virginia foreclosure law and pursuant to the Deed of Trust (i.e., the "law and contract" at issue), the Defendants were required to provide the following notices and procedures in order to foreclose on and sell the Property:

- Prior to acceleration and foreclosure, HSBC was required to notify Plaintiff of (a) the default; (b) the action required to cure her default; (c) the "date, not less than 30 days from the date the notice [was] given to [Plaintiff], by which the default must be cured;" and (d) "that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by" the Deed of Trust and "sale of the Property." (Ex. B, page 13).

- Once the power of sale was invoked, HSBC or Glasser & Glasser was required to give Plaintiff written notice of the time, date, and place of the trustee's sale. Va. Code § 55-59.1(A); (Ex. B, page 13). The notice must include a copy of the executed and notarized appointment of substitute trustee. Va. Code § 55-59.1(A); *see id*. § 55-62 (permissible form for notice of sale).

- Glasser & Glasser was required to give public notice of the foreclosure sale by advertising the sale once a week for two successive weeks in a newspaper having general circulation in Prince William County. Va. Code § 55-59.2(A)(1); (Ex. B, page 13). The contents of the advertisement are governed by Va. Code § 55-59.3.

Here, the Defendants followed the proper procedures for foreclosing and selling the Property. On December 4, 2008, Litton, as HSBC's authorized loan servicer, notified Plaintiff of her default. (Litton Dec., ¶ 8, Ex. 1). The notice informed Plaintiff of the action required to cure her default, the date by which Plaintiff must cure the default (45 days after the notice), and warned her that the Note payment would be accelerated if she failed to cure the default. (Litton Dec., ¶ 8, Ex. 1). Plaintiff did not cure the default. (Litton Dec., ¶ 6).

On April 1, 2009, Glasser & Glasser, as substitute trustee, notified Plaintiff of the foreclosure sale scheduled for April 15, 2009. (Glasser Dec., ¶ 5, Ex. 2). The written notice informed Plaintiff of the date, time, and location of the trustee's sale. (Glasser Dec., ¶ 5, Ex. 2). Furthermore, the notice included a copy of the executed and notarized appointment of substitute trustee. (Glasser Dec., ¶ 5, Ex. 2). Pursuant to Virginia law and the Deed of Trust, Glasser & Glasser also gave public notice of the foreclosure by advertising the sale for two consecutive weeks in the *Washington Examiner*, a newspaper of general circulation in Prince William County. (Glasser Dec., ¶ 6, Ex. 3).

Thus, the Defendants properly followed the required steps and procedures for foreclosing on and selling the Property. Indeed, Plaintiff does not allege any impropriety committed by any of the Defendants in foreclosing on the Property. Therefore, Plaintiff's claim of "wrongful foreclosure" fails and must be dismissed with prejudice.

## III.    Plaintiff's erroneous legal theories do not prevent summary judgment.

Plaintiff has no factual basis for her quiet title and declaratory judgment claims. Instead, Defendants expect that Plaintiff will respond to this motion by asserting incorrect and unsupported legal theories regarding loan securitization, "double recovery," and "splitting" the

Note from the Deed of Trust.  None of Plaintiff's legal theories have any merit, and, therefore, the Court should grant Defendants' motion for summary judgment.

A.     **Plaintiff's "show me the note" claim is contrary to the facts.**

Plaintiff's Amended Complaint generally asserts a "show me the note" claim, in which Defendants must come to a court of law and prove their authority or "standing" to foreclose on the secured Property.  The claim is contrary to Virginia's non-judicial foreclosure laws.  Furthermore, Defendants have now "shown the note" to Plaintiff and confirmed their ownership and possession of the original Note and Deed of Trust bearing Plaintiff's original ink signatures and Fremont's blank endorsement.  Accordingly, Plaintiff's claim that Defendants do not own and possess the debt obligation at issue is contrary to the facts and must be dismissed.

B.     **Plaintiff's "double recovery" claim has been specifically rejected by this Court.**

Defendants expect Plaintiff to assert a "double recovery" theory based on an incorrect understanding of credit default swaps, "credit enhancements," and loan securitization.[7] According to Plaintiff's theory, Defendants may have received a credit "payoff" or swap upon Plaintiff's default.  Therefore, the foreclosure on the Property resulted in a double recovery. Plaintiff's double recovery theory fails because it is unsupported by any factual allegations and is contrary to law.  Moreover, this Court has explicitly rejected the exact same double recovery theory in the *Horvath* and *Areebuddin*.

The claims and theories asserted by the claimant in *Horvath* were *extremely* similar to the claims and theories at issue here.[8]  Like the Plaintiff here, the *Horvath* claimant attempted to void a foreclosure by asserting claims for declaratory relief, breach of fiduciary

---

[7] Plaintiff's Amended Complaint does not allege or assert a "double recovery" theory.  Therefore, the issue is not properly before the Court.  However, Plaintiff's counsel has repeatedly argued this theory in *extremely* similar cases.

duty, quiet title, fraud, and violations of the FDCPA.  (Ex. A, 2-6).  Like the Plaintiff here, the

*Horvath* claimant erroneously asserted that the promissory notes were "split" from the deeds of

trust, and, therefore, rendered unsecured.  (Ex. A, 3-4).  Moreover, the claimant in *Horvath*

asserted the exact same "double recovery" theory.

> Horvath claims . . . that the defendants that purchased the notes
> have received or have the right to receive insurance proceeds as a
> result of his default.   Based on these alleged events, Horvath
> claims that he was discharged from his obligations under the
> promissory notes, even though he has defaulted under the
> promissory notes and . . . [the defendant] trustees under the deeds
> of trust that secured the purchased and assigned promissory notes,
> had no right following his default to foreclose on the Property.

(Ex. F, pages 3-4).  This Court rejected Horvath's double recovery theory, ruling:

> Horvath provides no factual or legal basis, and the Court finds
> none, to support his contention that because Horvath's default
> triggered insurance for any losses caused by that default or "credit
> enhancements," he is discharged from the promissory notes and the
> Property is released from the deeds of trust.

(Ex. A, page 4).  Similarly the Court rejected the same theories in the *Areebuddin* case.  (Ex. E,

pages 7-8).  The same analysis applies here.  Plaintiff fails to plead any factual allegations to

support the assertion that any of the Defendants have received a "payoff" with reference to the

Note at issue.  Furthermore, as this Court correctly ruled in *Horvath* and *Areebuddin*, there is no

legal basis to support Plaintiff's contention that an insurance payment, credit default swap, or

"credit enhancement" could somehow discharge Plaintiff from the Note or release the Property

from the Deed of Trust.  Plaintiff's "double recovery" theory fails and does not prevent summary

judgment.

---

[8] The Amended Complaint in *Horvath* is attached hereto as **Exhibit G**.

C.     **Plaintiff's theory that the Note is unsecured because it was "split" from the Deed of Trust is contrary to law.**

Finally, Plaintiff asserts an erroneous legal theory regarding the "splitting" of the Note from the Deed rendering the Note unsecured and the Deed unenforceable.  (Am. Compl., ¶ 59) (alleging the Note "has been split from the Deed of Trust resulting in an unsecured Note or obligation, voiding the security interest in the Property").  Contrary to Plaintiff's claims, Virginia law is clear that the negotiation of a note or bond secured by a deed of trust or mortgage carries with it that security.  *See*, *e.g.*, *Williams*, 139 Va. at 784 ("[W]henever the debt is assigned the deed of trust or mortgage is assigned or transferred with it."); *Stimpson*, 82 Va. at 200-01 ("It is undoubtedly true that a transfer of a secured debt carries with it the security without formal assignment or delivery.").  Once again, this Court recently rejected the exact same theory in nearly identical cases.  *See Horvath*, Ex. F, page 4 (dismissing an identical claim); *Areebuddin*, Ex. E, pages 6-7 (dismissing identical claim).  Thus, even if, as Plaintiff asserts without any factual support, there has been a so-called "split" between the Note and the Deed, the purchaser of the Note, in this case HSBC as trustee, received the debt *in equity* as a secured party.  Plaintiff's assertions regarding "splitting" a note and deed are simply contrary to the law and must be dismissed.

## CONCLUSION

WHEREFORE, Defendants HSBC Bank USA, N.A., as Trustee under the Pooling and Servicing Agreement dated as of August 1, 2006, Fremont Home Loan Trust 2006-B; Litton Loan Servicing LP; Wells Fargo Bank, N.A., as Master Servicer on behalf of Fremont Home Loan Trust 2006-B; Mortgage Electronic Registration Systems, Inc.; Glasser and Glasser, P.L.C.; John & Jane Doe Certificate Holders I-M Fremont Home Loan Trust 2006-B; Jack & Jill

Doe Certificate Holders I-M; and Qui Chi Doe Association, corporations/entities I-M,

respectfully request that the Court grant their Motion for Summary Judgment and enter an Order

dismissing with prejudice all of Plaintiff's claims against them and granting whatever other legal

or equitable relief the Court deems appropriate.

**HSBC BANK USA, N.A., as Trustee
under the Pooling and Servicing
Agreement dated as of August 1, 2006,
Fremont Home Loan Trust 2006-B,**

**LITTON LOAN SERVICING LP,**

**WELLS FARGO BANK, N.A., as
Master Servicer on behalf of
Fremont Home Loan Trust 2006-B**

**MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,**

**GLASSER AND GLASSER, P.L.C.,**

**JOHN & JANE DOE
CERTIFICATE HOLDERS I-M
FREMONT HOME LOAN
TRUST 2006-B,**

**JACK & JILL DOE
CERTIFICATE HOLDERS I-M, and**

**QUI CHI DOE
ASSOCIATION,
CORPORATIONS/ENTITIES I-SM**

By: ___/s/ Jon S. Hubbard_____
               Of Counsel

John C. Lynch, Esquire
Virginia State Bar No. 39276
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA  23462

Telephone:  (757) 687-7765
Facsimile:   (757) 687-1504
E-mail: john.lynch@troutmansanders.com

Jon S. Hubbard, Esquire
Virginia State Bar No. 71089
TROUTMAN SANDERS LLP
1001 Haxall Point
P.O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1406
Facsimile: (804) 698-5186
jon.hubbard@troutmansanders.com

*Counsel for Defendants HSBC Bank USA, N.A.,*
*as Trustee under the Pooling and Servicing*
*Agreement dated as of August 1, 2006,*
*Fremont Home Loan Trust 2006-B;*
*Litton Loan Servicing LP;*
*Wells Fargo Bank, N.A., as*
*Master Servicer on behalf*
*of Fremont Home Loan Trust 2006-B*
*Mortgage Electronic Registration Systems, Inc.;*
*Glasser and Glasser, P.L.C.;*
*John & Jane Doe Certificate Holders I-M Fremont Home Loan Trust 2006-B;*
*Jack & Jill Doe Certificate Holders I-M; and*
*Qui Chi Doe Association, corporations/entities I-M*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of March, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

Christopher E. Brown, Esq.
R. Michael Smith, Esq.
6269 Franconia Road
Alexandria, Virginia 22310
Tel: (703) 924-0223
Fax: (703) 924-1586
Email: brownfirm@lawyer.com
*Counsel for Plaintiff*

Harold G. Belkowitz, Esq.
Ober, Kaler, Grimes & Shriver
1401 H Street, N.W., 5th Floor
Washington, DC 20005-3324
Tel: (202) 326-5037
Fax: (202) 326-5267
Email: hgbelkowitz@ober.com
*Counsel for Defendant, Fremont Reorganization Corp.,*
*f/k/a Fremont Investment & Loan Corp.*

I further certify that on the 26th day of March, 2010, a true and correct copy of the foregoing was sent via regular mail, postage prepaid, to the following:

Nectar Projects, Inc.
c/o Tina B. McDaniel
104 N. Bailey Lane, Suite 100
Purcellville, Virginia 20132
*Defendant*

Long & Neyhart, P.C.
c/o Tracy Neyhart, Esq.
210 Otey Street
P.O. Box 196
Blacksburg, Virginia 24060
*Defendant*

          /s/ Jon S. Hubbard
Jon S. Hubbard, Esquire
Virginia State Bar No. 71089
TROUTMAN SANDERS LLP
1001 Haxall Point
P.O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1406
Facsimile: (804) 698-5186
jon.hubbard@troutmansanders.com

*Counsel for Defendants HSBC Bank USA, N.A.,
as Trustee under the Pooling and Servicing
Agreement dated as of August 1, 2006,
Fremont Home Loan Trust 2006-B;
Litton Loan Servicing LP;
Wells Fargo Bank, N.A., as
Master Servicer on behalf
of Fremont Home Loan Trust 2006-B
Mortgage Electronic Registration Systems, Inc.;
Glasser and Glasser, P.L.C.;
John & Jane Doe Certificate Holders I-M Fremont
Home Loan Trust 2006-B;
Jack & Jill Doe Certificate Holders I-M; and
Qui Chi Doe Association, corporations/entities I-M*

1899780v1