IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JENNY ZAMBRANO,

    Plaintiff,

v.                              Case No. 1:09-cv-000996 (CMH)

HSBC BANK USA, N.A., as Trustee under
the Pooling and Servicing Agreement dated
August 1, 2006, Fremont Home Loan Trust
2006-B, *et al.*,

    Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

    Plaintiff, Jenny Zambrano, by counsel, submits her Opposition to the Motion for Summary Judgment filed by Defendants HSBC Bank USA, N.A., as Trustee under the Pooling and Servicing Agreement dated as of August 1, 2006, Fremont Home Loan Trust 2006-B ("HSBC"); Litton Loan Servicing LP ("Litton"); Wells Fargo Bank, N.A., as Master Servicer on behalf of Fremont Home Loan Trust 2006-B;[1] Mortgage Electronic Registration Systems, Inc.; Glasser and Glasser, P.L.C. ("Glasser & Glasser"); John & Jane Doe Certificate Holders I-M Fremont Home Loan Trust 2006-B; Jack & Jill Doe Certificate Holders I-M; and Qui Chi Doe Association, corporations/entities I-M (collectively, the "Defendants"), filed pursuant to Fed. R. Civ. P. 56(b), and in support hereof presents the following:

                                        **I.    INTRODUCTION**

    Plaintiff seeks to void the April 15, 2009 foreclosure and sale of her residential property (the "Property"). Plaintiff asserts that these Defendants have no authority to remove/appoint

substitute trustees, or to have foreclosed on her home, whether pursuant to statute or contract.

VA Code §55-59 grants to the *secured party* the privilege of proceeding to foreclosure using a non-judicial process. Further, VA Code §55-59(9) grants to the one entitled to greater than 50% of the obligations due under the Note the right to remove/appoint substitute trustees. The Deed of Trust is in the nature of a contract (VA Code §55-59). The Deed of Trust grants to the "lender" the right to remove/appoint substitute trustees and to invoke the power of sale.

Thus, in order to be able to remove/appoint substitute trustees you must either be 1) the lender, or 2) entitled to greater than 50% of the obligations due under the Note. Further, in order to invoke the power of sale, you must be the lender / secured party. None of these Defendants qualify as the lender/secured party, and are not entitled to greater than 50% of the obligations due under the Note.

As a preliminary matter, Plaintiff submits that the Deed of Trust and Note are not subject to the UCC. The Deed of Trust is in the nature of a contract. VA Code Ann. §55-59. The Virginia UCC, §8.9A-109(11) states that the "secured transactions" section of the UCC does not apply to the creation or transfer of an interest in or lien on real property; except to the extent that provision is made for in §§8.9A-203(attachment) and 8.9A-308 (perfection). This was a secured transaction. The Defendants converted this to a commercial transaction subsequent to consummation of the loan.

A. Securitization

Securitization of residential mortgages is "the process of aggregating a large number of notes secured by deeds of trust in what is called a mortgage pool, and then selling security interests in that pool of mortgages." Kurt Eggert, *Held Up In Due Course: Predatory Lending, Securitization, and the Holder in Due Course Doctrine*, 35 CREIGHTON L. REV. 503, 536

(2002). The process begins with a borrower negotiating with a mortgage broker for the terms of the loan. Then, the mortgage broker either originates the loan in its own name or in the name of another entity, which presumably provides the money for the loan. Almost immediately, the broker transfers the loan to the funding entity. "This lender quickly sells the loan to a different financial entity, which pools the loan together with a host of other loans in a mortgage pool." *Id.* at 538. The assignee then transfers the mortgages in the pool to another entity, which in turn transfers the loans to a special purpose vehicle ("SPV",) whose sole role is to hold the pool of mortgages. *Id.* at 539. "The transfer to the special purpose trust must constitute a true sale, so that the party transferring the assets reduces its potential liability on the loans and exchanges the fairly illiquid loans for much more liquid cash." *Id.* at 542. Next, the SPV issues securities which the assignee sells to investors. *Id.* at 539 (As cited in Exhibit A, *In Re Weisband*).

Plaintiffs wish to focus on the point made that "the transfer to the special purpose trust must constitute a true sale;" *id est* there will be concrete documented evidence that *that* Note was *sold* to *that* trust.  Holding a Note endorsed in blank is not evidence that the particular trust identified in fact, purchased that particular Note at a true sale.  To rely on a Note endorsed in blank alone not only violates the terms of the contract, it exposes the Court to all manner of potential fraud.

II. RESPONSE TO ALLEGED UNDISPUTED FACTS

I.  **Origination and Ownership of the Loan**

   A.  **Fremont originated the Loan.**

      1.  On May 17, 2006, Plaintiff entered into the Loan with Fremont evidenced by the Note and secured by the Deed of Trust. (Am. Compl., ¶¶ 28-33). Copies of the Note and Deed of Trust were attached as Exhibits A and B to Defendants' Motion for Summary Judgment.  The

undersigned counsel retains possession of the original Note and Deed of Trust bearing Plaintiff's original ink signatures at his office in Richmond, Virginia. These original documents are available at the request of the Court or Plaintiff's counsel. *Undisputed; however, Plaintiff objects to the copies submitted as to their veracity and wishes to inspect the original documents at the hearing for this motion.*

2. The Deed of Trust placed a security interest in the Property. (Am. Compl., ¶ 29); (Docket 43-2; Deed of Trust, generally).

### B. There is no evidence that Fremont negotiated the Note to HSBC as trustee of the Trust and transferred possession of the Note and Deed of Trust to HSBC.

3. In the Note, Plaintiff explicitly agreed that the Note was a fully negotiable instrument, stating "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" (Docket 43-1, page 1). *Undisputed, however this does not mean it was transferred to any of these Defendants.*

*4.* In the Deed of Trust, Plaintiff agreed that the "Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." (Docket 43-2, page 12). *Again, this does not mean it was sold to any of these Defendants.*

5. *In support of the following fact(s), Defendants rely on an affidavit / declaration of Judy Tidwell*: "On or about August 1, 2006, Fremont negotiated ownership and possession of the Note to HSBC, as evidenced by paragraph 3 of the Declaration of Judy A. Tidwell, Senior Litigation Processor for Litton's legal department, attached hereto as [Def.'s] **Exhibit C** (the "Litton Dec., ¶ ___)." (Def.s' Memo p. 4). *Plaintiff objects to this affidavit. An affidavit or declaration of an individual must reveal that the declarant has personal knowledge of the facts*

*of which they speak. There is no evidence in the declaration that Ms. Tidwell has such knowledge, and should not be considered by the Court.*

6.  "Fremont endorsed the Note "in blank" by stamping on the back of the Note "Pay to the Order of without recourse." (Docket 43-1, page 5).[3] The endorsement was signed by Doug Pollock, Assistant Vice President for Fremont.[4] (Docket 43-1, Page 5)." *This assertion is inconsistent with documents submitted by these Defendants in another court matter - the unlawful detainer case for possession of the property. This is addressed below.*

7.  On or about August 1, 2006, Fremont delivered the original Deed of Trust bearing Plaintiff's ink signatures to HSBC. (Docket 43-3, Litton Dec., ¶ 4). *This fact is contested given the lack of endorsement on the copy of the Note presented to the Court by Defendant HSBC in the unlawful detainer case.*

8.  "On behalf of the Trust, HSBC retained possession of the original Note and Deed bearing Plaintiff's original ink signatures from the date they were transferred by Fremont until production of the original documents to Glasser & Glasser in relation to the foreclosure and trustee's sale at issue in this action. (Docket 43-3; Litton Dec., ¶ 5)." *The lack of endorsement on the Note presented to the Court in the unlawful detainer case raises a question of fact as to whether or not this ever occurred.*

    **C.  It is irrelevant that Plaintiff defaulted on her payment obligations under the Note.**

9.  Plaintiff admits that she "refused to pay" her repayment obligations under the Note. (Am. Compl., ¶ 71). *Undisputed that when the loan was accelerated and the entire balance, plus fees, costs, attorney's fees, etc., were added, she refused to pay.*

10. On August 1, 2007, Plaintiff defaulted on her loan obligations by failing to make her mortgage loan payment. The last mortgage loan payment made by Plaintiff was on July 1,

2007. (Litton Dec., ¶ 6). *Undisputed.*

11.     To date, Plaintiff has continued to be in default (i.e., failed to pay her mortgage payment) since August 1, 2007. (Litton Dec., ¶ 6). *Undisputed.*

12.     On May 7, 2008, Fremont transferred its rights and obligations as loan servicer for the loan at issue to Litton. (Litton Dec., ¶ 7); *see* Am. Compl., ¶ 53 (alleging "upon information and belief" that loan servicing rights were transferred to Litton). *Undisputed.*

**D.     Defendants *im*properly foreclosed and sold the Property on April 15, 2009.**

13.     On December 4, 2008, Litton gave Plaintiff notice of her default and HSBC's intent to accelerate payment of the Loan pursuant to the Note and Deed. (Docket 43-3; Litton Dec., ¶ 8, Ex. 1). *Undisputed.*

14.     Plaintiff did not cure her default by the date specified in the Notice of Default. (Docket 43-3; Litton Dec., ¶ 6). *Undisputed.*

15.     On March 13, 2009, HSBC, through its loan servicer Litton, appointed Glasser & Glasser as substitute trustee pursuant to the Deed. (Docket 43-3; Litton Dec., ¶ 9, Ex. 2). *Undisputed.*

16.     HSBC instructed Glasser & Glasser to invoke the power of sale pursuant to the Deed of Trust and Virginia foreclosure law, as evidenced by paragraph 4 of [Docket 43-4], the Declaration of Richard A. Knee, Supervising Attorney for the foreclosure department of Glasser & Glasser (the "Glasser Dec., ¶ ___"). *Undisputed that this occurred, but it is disputed that HSBC had the authority to so act.*

17.     On April 1, 2009, Glasser & Glasser notified Plaintiff of the trustee's sale scheduled for April 15, 2009. (Docket 43-4; Glasser Dec., ¶ 5, Ex. 2"). *Undisputed.*

18.     On April 6 and 13, 2009, Glasser & Glasser advertised the trustee's sale of the

Property scheduled for April 15, 2009 in the *Washington Examiner* newspaper. (Docket 43-4; Glasser Dec., ¶ 6, Ex. 3). *Undisputed.*

19.     On April 15, 2009, Glasser & Glasser foreclosed upon and sold the Property via a trustee's sale. (Am. Compl., ¶ 163); (Docket 43-4; Glasser Dec., ¶ 7, Ex. 4). *Undisputed that Defendant G&G conducted an unauthorized foreclosure.*

20.     HSBC, by and through its loan servicer Litton, produced to Glasser & Glasser the original Note and original Deed of Trust bearing Plaintiff's original ink signatures and Fremont's blank endorsement. (Docket 43-3; Litton Dec., ¶ 12); (Docket 43-4; Glasser Dec., ¶ 8). *Disputed, in particular <u>when</u> the endorsement was placed on the Note (assuming it is on the original Note).*

21.     On May 19, 2009, Glasser executed the Trustee's Deed conveying ownership of the Property from Plaintiff. (Glasser Dec., ¶ 9, Ex. 4). *Undisputed that this occurred; disputed that it was done with proper authority.*

22.     On July 13, 2009, Glasser recorded the Trustee's Deed in the Prince William County Land Records. (Glasser Dec., ¶ 9, Ex. 4). *Undisputed.*

23.     Plaintiff filed this action on July 31, 2009, approximately three-and-a-half months after the foreclosure and trustee's sale. *Undisputed, as Plaintiff's attempts to submit defenses and counterclaims against HSBC were summarily dismissed by the unlawful detainer court, claiming, in error, that it had no jurisdiction to hear said claims (in direct violation of VSR 7B, and the rebuttable presumption granted by VA Code Ann. §8.01-389). Thus, Plaintiff was required to file this independent action.*

### III.     PROCEDURAL POSTURE

Plaintiff originally filed this action in the Circuit Court for the County of Prince William, Virginia on July 31, 2009. On September 3, 2009, Defendants removed the action to this Court.

On September 23, 2009, Plaintiff amended her complaint to assert sixteen separate claims. On November 9, 2009, the Court dismissed fourteen of Plaintiff's claims. (Docket No. 30). Defendants' motion for summary judgment addresses the two remaining claims for quiet title (Am. Compl., ¶¶ 172-74) and "declaratory judgment -- wrongful foreclosure" (Am. Compl., ¶¶ 102-04).

## IV. STANDARD OF REVIEW

To survive summary judgment, Plaintiff must present "'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). It is not enough "simply [to] show that there is some metaphysical doubt as to the material facts." *Id.* at 586. The non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case" to avoid summary judgment. *Lujan v.National Wildlife Federation*, 497 U.S. 871, 883 (1990); *Davis v. Thoman Motel Corp.*, 900 F.2d 28, 31 (4th Cir. 1990). "A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

## V. ARGUMENT

A.  **Plaintiff's quiet title claim should proceed as (i) There is a question of fact as to Defendants' ownership and possession of the secured Note; and (ii) Plaintiff's default on her mortgage payments is irrelevant to the issues before this Court.**

The Commonwealth of Virginia is a race-notice jurisdiction. Duty v. Duty, 661 S.E.2d 477, 479 (VA 2008)(VA Code §55-96(A)(1). Plaintiff's deed "got there first" and is unchallenged by the Defendants. The Defendants' Foreclosure Deed of Sale was recorded after

Plaintiff's. Thus, the burden is on the Defendants to prove a proper chain of title of the Note / Deed of Trust to show the interest has properly passed to them – See Maine v. Adams:

> [I]n a quiet title action, a plaintiff asks the court to declare that he has good title to the property in question and *compels any adverse claimant to prove a competing ownership claim or forever be barred from asserting it*. Black's Law Dictionary 32 (8th ed. 2004); see City of Staunton v. The Augusta Corp., 169 Va. 424, 429-32, 193 S.E. 695, 696-97 (1937) (city failed to carry burden to show it owned certain real property); Costello, Virginia Remedies § 20.07 at 20-38, 20-39. Maine v. Adams, 277 Va. 230, 238 (2009)(emphasis added).

Plaintiff has every right to challenge the Foreclosure Deed of Sale in the land records, as it affects their title (in fact, attempts to take it from them). Indeed, the entire point of a Quiet Title action is to "quiet" the noise being made in the land records by some other entity and its alleged interest or rights - Plaintiff seeks to "quiet" the Foreclosure Deed of Sale which was recorded by the Defendants in the land records to reflect some interest in their property. Were these Defendants unable to establish that they are entitled to the obligations due under the note the liens in the land records would remain *ad infinitum* as an unfair cloud on Plaintiffs' property. A quiet title action is the proper way to proceed to resolve that potential problem, and consequently this claim must not be dismissed.

Plaintiff's claims are not only being made by homeowners, but by second lien holders as well. See BAC Funding v. Jean-Jacques, et al. - second trust lienholder sues first trust lien holder alleging it had no standing entitling it to proceeds of foreclosure sale (attached as exhibit B). Merely coming to Court and saying the Note belongs to a loan trust is not sufficient evidence to prove standing or an Article III injury. See Bank of New York, as trustee for CWALT Alternative Loan Trust 2006-40T1 v. Gindele (decided February 19, 2010) (as there was no evidence Bank of New York, as trustee for a CWALT Trust, possessed an enforceable interest in a Deed of Trust, the Court held BoNY had no right to foreclose)(attached as Exhibit

C).

### 1. There is evidence that Defendants did not own the Loan and if they possessed the original Note it was lacking an endorsement.

Plaintiff claims that she is the "only party that can prove [a] legal and equitable ownership interest in the Property." (Am. Compl., ¶ 173). There is no dispute that Plaintiff entered into the loan evidenced by the Note and secured by the Deed of Trust placing a security interest in the Property. (Am. Compl., ¶¶ 28-33). The originating lender was Fremont. (Am. Compl., ¶ 30). The Note submitted by Defendants is endorsed in blank (Docket 43-1).  However, Defendant HSBC Bank, USA, as Trustee ("HSBC") filed an unlawful detainer action in the general district court of Prince William County (Exhibit D –Unlawful Detainer Summons).  That copy of Note proffered to the Court by Defendant HSBC during the unlawful detainer proceedings seeking to evict the Plaintiff curiously did not contain this endorsement (Exhibit E - Bill of particulars with unendorsed Note as exhibit thereto, p.26 thereof).  This creates a question of fact: when was the endorsement placed on the Note.  Were the endorsement not present at the time the deed of appointment of substitute trustee was executed (Exhibit F – Deed of Sub Trustee, executed 3.13.09), or when the power of sale was invoked, then those actions are unauthorized unless taken by the original lender, which they were not in this case.

Even *if* the trier of fact accepts whatever explanation Defendant HSBC Bank as trustee for the loan trust has with respect to the missing endorsement in the unlawful detainer proceedings, the proper party did not execute the Deed to Appoint the Substitute Trustee.  The party of the first part is identified as "HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF AUGUST 1, 2006, FREMONT HOME LOAN TRUST 2006-B, Grantor, the holder of a note

secured by a deed of trust …" However, it is executed by Litton Loan Servicing, LP, Attorney in fact. Yet no evidence of the alleged attorney in fact relationship is in the land records, or has been presented to this Court, or produced in response to request for documents that were recently provided to Plaintiff's counsel.

"Rights" come from one of two places: statutes/laws - which govern everyone; and contracts - which cannot violate laws and only bind the parties thereto. The Deed of Trust governs who can take certain actions if a default is declared. Any other contracts attempting to create "rights" to act under the Deed of Trust are of no concern to (or authority over) Plaintiff as she is not a party thereto. Further, the Deed of Trust (Docket 43-2) states unequivocally in ¶13: "Successors and Assigns Bound ... the covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of lender and Borrower." Thus, whomever claims to be the owner of the Note is bound by the terms of the Deed of Trust, which states that only the "Lender" may remove and appoint substitute trustees (¶24), declare default, accelerate the Note and invoke the power of sale (¶22).

The Deed of Trust does not allow for agents to act for the Lender with respect to certain important duties, such as invoking the power of sale and removing and appointing substitute trustees. Virginia case law is clear: appointment of trustees must conform precisely to the requirements of the trust document. Frazer v. Millington, 252 VA 195 (1996). The trust document is the Deed of Trust, which states that the "Lender" may remove and appoint substitute trustees. Plaintiff asserts that the substitute trustee was appointed without authority, and therefore is *null* and *void* and of no legal effect. Washington , et al. v. Alexandria & Washington R.R. Co., et al., 19 Gratt. 592, 60 VA 592 (Va.Mil.Ct.App.), 1870 WL 3568 (Va.Mil.Ct.App.)(attached as Exhibit G). If the appointment is a nullity there is but one result -

the foreclosure is null and void as well.

Whichever version of the Note Defendants wish to rely on at this time, there is no specific endorsement on the Note as required by the trust's own SEC filings (see "I. A. Securitization," above), suggesting that this Note was never presented or delivered to the trust. This is fatal to Defendants' position (See Ex A - In Re Weisberg).

### B.  Declaratory Action

As stated in FRCP 57 "These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201." And 28 U.S.C. §2201 states:

> (a) In a case of actual controversy within its jurisdiction …. any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Plaintiff is asking these Defendants - all parties of which Plaintiff is aware who may have an interest in her Note/Deed of Trust/Property - to prove they own the debt and, if proven, that they have an Article III injury if they want to avail themselves of the non-judicial foreclosure statutes. Merely voiding this foreclosure will not end the predicament that Plaintiff is in with respect to entities who cannot prove a debt is owed to them.  This has nothing to do with whether or not one Defendant or another is holding a blank endorsed note.  This count is to determine to whom Plaintiff owes her money.  She wants to know, she has a right to know (15 USC 1641(f)(2)), and one of these Defendants is, presumably, going to be able to prove a debt is owed to it.

### C.  Plaintiff's "double recovery" claim is sound and should be accepted

Defendants seek dismissal of Plaintiff's claims and allege that the claim of double "has been rejected by this Court." Strong language alone will not prevail. The Virginia legislature,

the Virginia Supreme Court and the U.S. Supreme Court do not share the Defendants' view.  To allow the true party in interest, once identified and proven by *evidence*, to "take the home" from Plaintiff would potentially allow for a double, triple, or more recovery which is strictly prohibited in Virginia by statute: VA Code §8.01-147 (no double recovery allowed); by Virginia case law: <u>Nizan v. Wells Fargo Bank Minnesota Nat'l Ass'n</u>, 274 Va. 481 (2007); and by the United States Supreme Court: <u>Summers, et al. *v.* Earth Island Institute</u>, 555 US \_\_\_\_\_, 129 S. Ct 1142, 173 L.ED 2d 1 (2009)(third party settlements strips any allegedly asserted Article III that previously established a standing injury).  The simple fact is, if the investors (assuming it is securitized) or the financial entity have/has been compensated for their losses through credit enhancements, credit default swaps, or bail outs in any way, they are not entitled to get the house as well.  This Court can take judicial notice of the billions that HSBC received directly from taxpayers, and indirectly from AIG, with a simple search at www.propublica.org.

    1.    **<u>Credit Enhancements / Credit Defeault Swaps</u>**

In <u>Nizan</u> the Virginia Supreme Court held that double recovery would occur as Wells Fargo received a settlement from the loan originator which refused to pay when Wells Fargo exercised its "buy-back" provision in the contract.  The mere fact Wells Fargo had to sue does not change the application of the double recovery theory.  Had the loan originator merely agreed to "buy-back" the loan, Wells Fargo would still receive a double recovery had it been allowed to pursue Nizan on the deficiency.

Plaintiff did not agree that they could "have her house" if she defaulted.  She agreed that the property would serve as security to protect the "lender" from losses, and that it could be sold to assist in the lender recovering those losses, *if any*.  Thus, we have three forms of "contract" to protect the lender (or its successor) from losses – credit default swap, credit enhancement policy,

and the Deed of Trust. There is no arguable difference between these *contracts*, all of which protect the purchaser of the "asset" from *losses*.

Double Recovery and Article III injury theories are very straightforward: does the party have a recognizable financial injury as a result of Plaintiff's breach of the terms of the Note. If the investors or the actual true party in interest received money or another type of settlement from whatever source to cover his losses, then the answer is <u>no</u>, it has no injury, therefore no standing, and to give them the house would result in a double recovery. It does not matter where the money comes from or who paid it. All that matters is a determination that an injury actually exists, and the test, as outlined in <u>Nizan</u> and <u>Summers</u>, *supra* is whether those funds were for the *same injury*.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court DENY the Motion for Summary Judgment.

Respectfully Submitted,

JENNY ZAMBRANO

Brown, Brown & Brown, P.C.


\_\_\_/s/_____
Christopher E. Brown, VSB#39852
6269 Franconia Road
Alexandria, Virginia 22310
Tel: (703) 924-0223
Fax:(703)924-1586
Email: brownfirm@lawyer.com
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of April, 2010, I provided the foregoing document via electronic and U.S. mail to:

John C. Lynch, Esquire
Virginia State Bar No. 39276
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7765
Facsimile:   (757)687-1504
E-mail: john.lynch@troutmansanders.com

Jon S. Hubbard, Esquire
Virginia State Bar No. 71089
TROUTMAN SANDERS LLP
1001 Haxall Point
P.O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1406
Facsimile: (804) 698-5186
Jon.hubbard@troutmansanders. com

*Counsel for Defendants HSBC Bank USA, N.A.,
as Trustee under the Pooling and Servicing
Agreement dated as of August 12, 2006,
Fremont Home Loan Trust 2006-B;
Litton Loan Servicing LP;
Wells Fargo Bank, N.A., as
Master Servicer on behalf of
Fremont Home Loan Trust 2006-B;
Mortgage Electronic Registration Systems, Inc.;
Glasser and Glasser, P.L.C.;
John & Jane Doe Certificate Holders I-M Fremont Home Loan Trust 2006-B;
Jack & Jill Doe Certificate Holders I-M; and
Qui Chi Doe Association, corporations/entities I-M*

/s/ Christopher E. Brown
Christopher E. Brown, VSB#39852
*Counsel for Plaintiff*