IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

)
JENNY ZAMBRANO,                        )
                                       )
          Plaintiff,                   )
                                       )
v.                                     )          Civil Action No.# 01:09-cv-996
                                       )
HSBC BANK USA, INC. et al.,            )
                                       )
          Defendants.                  )
                                       )



FILED

MAY 2 5 2010

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

This matter comes before the Court on Defendants' Motion for
Summary Judgment. Plaintiff complaint seeks to void the April 15,
2009 foreclosure and sale of 8033 Lomond South Drive, Manassas,
Virginia 20110, her residential property (the "Property").

Plaintiff entered into a loan (the "Loan") on May 17, 2006
evidenced by a promissory note (the "Note") and secured by a deed
of trust (the "Deed of Trust") placing a security interest on the
Property. The loan named Defendant Fremont Investment & Loan
Corporation ("Fremont") as the Lender, Defendant Long & Neyhart,
P.C. ("L&N") as the Trustee, and Defendant Mortgage Electronic
Registration Systems, Inc. ("MERS") as the Beneficiary. Fremont
is in the business of originating mortgages. L&N is a
professional corporation existing and organized under the laws of
the Commonwealth of Virginia. MERS' business includes the
electronic registration and transfer of mortgages, specifically

including the Property.

After executing the loan documents, Plaintiff began making loan payments to Fremont. Later, she stopped making her loan payments as required under the Note and Deed.

Plaintiff has not alleged that the secured Note has been paid off, released, or canceled. Instead, she asserts two claims against Defendants. First, Plaintiff alleges in her quiet title claim that she is "the only party to this matter that can prove [a] legal and equitable ownership interest in the Property." Second, Plaintiff alleges in her declaratory judgment claim that the Defendants "conducted a foreclosure proceeding against the Plaintiff in violation of law and contract."

On May 17, 2006, Plaintiff entered into the Loan with Fremont evidenced by the Note and secured by the Deed of Trust. The Deed of Trust placed a security interest on the Property. In the Note, Plaintiff explicitly agreed that the Note was a fully negotiable instrument, stating "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" In the Deed of Trust, Plaintiff agreed that the "Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."

On or about August 1, 2006, Fremont negotiated ownership and

possession of the Note to Defendant HSBC Bank USA, N.A. ("HSBC"),
as evidenced by paragraph 3 of the Declaration of Judy A.
Tidwell, Senior Litigation Processor for Litton's legal
department. HSBC is a bank that buys and sells mortgages. Fremont
endorsed the Note "in blank" by stamping on the back of the Note
"Pay to the Order of _____ without recourse." The
endorsement was signed by Doug Pollock, Assistant Vice President
for Fremont.

On or about August 1, 2006, Fremont delivered the original
Deed of Trust bearing Plaintiff's signatures to HSBC. On behalf
of the Trust, HSBC retained possession of the original Note and
Deed bearing Plaintiff's original signatures from the date they
were transferred by Fremont until the original documents were
given to Glasser & Glasser, P.L.C. in relation to the foreclosure
and trustee's sale at issue in this action.

Plaintiff admits that she "refused to pay" her repayment
obligations under the Note. On August 1, 2007, Plaintiff
defaulted on her loan obligations by failing to make her mortgage
loan payment. Up to the date of this opinion, the last mortgage
loan payment made by Plaintiff was on July 1, 2007.

On May 7, 2008, Fremont transferred its rights and
obligations as loan servicer for the loan at issue to Defendant
Litton Loan Servicing LP ("Litton"), a limited partnership that
also buys and sells mortgages. On December 4, 2008, Litton gave

-3-

Plaintiff notice of her default and HSBC's intent to accelerate payment of the Loan pursuant to the Note and Deed. Plaintiff did not cure her default by the date specified in the Notice of Default. On March 13, 2009, HSBC, through its loan servicer Litton, appointed Glasser & Glasser as substitute trustee pursuant to the Deed.

HSBC instructed Glasser & Glasser to invoke the power of sale pursuant to the Deed of Trust and Virginia foreclosure law. On April 1, 2009, Glasser & Glasser notified Plaintiff of the trustee's sale scheduled for April 15, 2009.

On April 6 and 13, 2009, Glasser & Glasser advertised the trustee's sale of the Property scheduled for April 15, 2009 in the *Washington Examiner* newspaper. On April 15, 2009, Glasser & Glasser foreclosed upon and sold the Property via a trustee's sale.

HSBC, by and through its loan servicer, Litton, produced to Glasser & Glasser the original Note and original Deed of Trust bearing Plaintiff's original signatures and Fremont's blank endorsement. On May 19, 2009, Glasser & Glasser executed the Trustee's Deed conveying ownership of the Property from Plaintiff. On July 13, 2009, Glasser recorded the Trustee's Deed in the Prince William County Land Records.

Plaintiff filed this action on July 31, 2009, approximately three and one-half months after the foreclosure and trustee's

-4-

sale. Plaintiff originally filed this action in the Circuit Court for the County of Prince William, Virginia on July 31, 2009. On September 3, 2009, Defendants removed the action to this Court. On September 23, 2009, Plaintiff amended her complaint to assert sixteen separate claims for (1) violation of the Truth in Lending Act; (2) violation of the Fair Debt Collection Practices Act; (3) violation of the Real Estate Settlement Procedures Act; (4) declaratory judgment -- wrongful foreclosure; (5) unjust enrichment; (6) "illegal gambling;" (7) "illegal gambling accessories;" (8) "pyramid scheme;" (9) violation of Virginia's false advertising statutes; (10) criminal violation of Virginia's sales statutes; (11) fraud; (12) negligent supervision; (13) breach of fiduciary duty; (14) quiet title; (15) injunction; and (16) violation of Plaintiff's due process rights under the United States and Virginia Constitutions. On November 9, 2009, this Court dismissed fourteen of Plaintiff's claims. Defendants' motion for summary judgment addresses the two remaining claims for quiet title and declaratory judgment.

Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56(b). Summary judgment should be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In such situations,

there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. As the Fourth Circuit has held:

> Though the burden of proof rests initially with the moving party, when a motion for summary judgment is made and supported as provided in Rule 56, the nonmoving party must produce "specific facts showing that there is a genuine issue for trial," rather than resting upon the bald assertions of his pleadings.

Ross v. Comms. Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985) (internal citations omitted) rev'd on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Trial judges have an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (citations omitted).

To survive summary judgment, Plaintiff must present "'specific facts showing that there is a *genuine issue for trial.*'" Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). It is not enough "simply [to] show that there is some metaphysical doubt as to the material facts." Id. at 586. Nor is the "mere existence of a scintilla of evidence" or "unsupported speculation" adequate to defeat a summary judgment motion. Baber v. Hospital Corp. of Am., 977 F. 2d 872, 875 (4th Cir. 1992). The non-moving party must "make a showing sufficient

-6-

to establish the existence of an element essential to that party's case" to avoid summary judgment. Lujan v. National Wildlife Federation, 497 U.S. 871, 883 (1990); Davis v. Thoman Motel Corp., 900 F.2d 28, 31 (4th Cir. 1990). "A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

Here, Plaintiff's assertions that (1) "Plaintiff is the only party to this matter that can prove legal and equitable ownership interest in the Property", and (2) Defendants "conducted a foreclosure proceeding against the Plaintiff in violation of law and contract" are contradictory to Virginia's foreclosure laws and to Defendants' verified statements and documents presented in this matter. Plaintiff has presented no evidence to call Defendants' submissions into question.

Plaintiff provides no evidence disputing Defendants' legal and equitable ownership of the Property. Indeed, the evidence shows that the Defendants, not Plaintiff, are the only parties that can demonstrate an equitable and legal ownership of the Property. Nor can Plaintiff submit any evidence showing that Defendants violated any law or breached any contract in conducting the foreclosure.

Plaintiff claims that she is the "only party that can prove

[a] legal and equitable ownership interest in the Property."
There is no dispute that Plaintiff entered into the loan
evidenced by the Note and secured by the Deed of Trust placing a
security interest in the Property. The originating lender was
Fremont. After origination, Fremont negotiated the Note to HSBC
as trustee for the Trust by endorsing the Note "in blank" and
delivering physical possession of the original Note to HSBC.
Persons entitled to enforce a negotiable instrument include the
"holder of the instrument." Va. Code § 8.3A-301. As the
originating lender, Fremont was the holder of the Note and
entitled to enforce the debt obligation against Plaintiff.
Fremont's "blank indorsement" essentially converted the Note into
"bearer paper." Va. Code § 8.3A-205(b). "When indorsed in blank,
an instrument becomes payable to bearer and may be negotiated by
transfer of possession alone until specially indorsed." Id.
Fremont's blank endorsement and delivery of the original Note to
HSBC rendered HSBC a holder of the instrument entitled to enforce
its terms against Plaintiff.

At the same time, Fremont delivered the original Deed of
Trust to HSBC. However, even if Fremont had not conveyed physical
possession of the Deed of Trust to HSBC, the negotiation of the
Note from Fremont to HSBC carried with it the equitable security
of the Deed of Trust. See, e.g., Williams v. Gifford, 139 Va.
779, 784 (1924) ("[I]n Virginia, as to common law securities, the

law is that both deeds of trust and mortgages are regarded *in equity* as mere securities for the debt and whenever the debt is assigned the deed of trust or mortgage is assigned or transferred with it."); Stimpson v. Bishop, 82 Va. 190, 200-01 (1886) ("It is undoubtedly true that a transfer of a secured debt carries with it the security without formal assignment or delivery.").

The Note continued to be secured and HSBC was entitled to enforce the terms of the Deed of Trust, including the power to invoke the sale of the Property upon Plaintiff's default. The face of the Note shows that the Note has a blank endorsement. The issue of whether Defendants had authority to foreclose on the Property is simple. HSBC owned and possessed the original Note and, therefore, was a holder entitled to enforce the Note. As a holder of the Note, HSBC enjoyed the security of the Deed of Trust and, therefore, was authorized to initiate the foreclosure on the Property through the trustee pursuant to the Deed of Trust and Virginia's foreclosure laws.

There is no dispute that Plaintiff stopped paying her mortgage payments. In fact, Plaintiff declares in her Complaint that she "refused to pay" her obligations under the Note. Plaintiff defaulted on the Note by missing the payment due on August 1, 2007. Plaintiff has remained in default for over two years. Virginia Code § 55-59(7) states the authority of the trustee to foreclose and sell property provided as security for a

loan after the borrower is in default.

> In the event of default in the payment of the debt
> secured, or any part thereof, at maturity, or in the
> payment of interest when due, or of the breach of any
> of the covenants entered into or imposed upon the
> grantor, then at the request of any beneficiary the
> trustee shall forthwith declare all the debts and
> obligations secured by the deed of trust at once due
> and payable and may take possession of the property and
> proceed to sell the same at auction . . . .

Va. Code § 55-59(7).

Furthermore, in the Deed of Trust, Plaintiff explicitly agreed that the note holder would have authority to invoke foreclosure and sell the property if she did not cure her default. "If the [Plaintiff's] default is not cured on or before the date specified in the [acceleration] notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law."

After the April 15, 2009 trustee's sale, Glasser & Glasser executed the Trustee's Deed on May 19, 2009 conveying ownership of the Property to HSBC. On July 13, 2009, Glasser & Glasser recorded the Trustee's Deed in the land records for Prince William County.

Plaintiff's claim of quiet title is without merit. Indeed, Plaintiff, not Defendants, is unable to prove any ownership interest in the Property since her interest has been properly

-10-

transferred to HSBC pursuant to Virginia's foreclosure laws and the terms of the Deed of Trust.

Plaintiff seeks a declaration from the Court ruling that (i) Defendants "conducted a foreclosure proceeding against the Plaintiff in violation of law and contract;" and (ii) the "initiation of the foreclosure" was "negligent, wanton or intentional." The foreclosure, however, occurred on April 15, 2009 -- three and one-half months before Plaintiff filed this action.

Plaintiff's declaratory judgment claim is contrary to the facts. Plaintiff asserts that the Defendants "conducted a foreclosure proceeding against the Plaintiff in violation of law and contract." Under Virginia foreclosure law and pursuant to the Deed of Trust (i.e., the "law and contract" at issue), the Defendants were required to provide the following notices and procedures in order to foreclose on and sell the Property: Prior to acceleration and foreclosure, HSBC was required to notify Plaintiff of (a) the default; (b) the action required to cure her default; (c) the "date, not less than 30 days from the date the notice [was] given to [Plaintiff], by which the default must be cured;" and (d) "that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by" the Deed of Trust and "sale  of the Property."

Once the power of sale was invoked, HSBC or Glasser & Glasser was required to give Plaintiff written notice of the time, date, and place of the trustee's sale. Va. Code § 55-59.1(A). The notice must include a copy of the executed and notarized appointment of substitute trustee. Va. Code § 55-59.1(A); see also § 55-62 (permissible form for notice of sale).

Glasser & Glasser was required to give public notice of the foreclosure sale by advertising the sale once a week for two successive weeks in a newspaper having general circulation in Prince William County. Va. Code § 55-59.2(A)(1). The contents of the advertisement are governed by Va. Code § 55-59.3.

Here, the Defendants followed the proper procedures for foreclosing and selling the Property. On December 4, 2008, Litton, as HSBC's authorized loan servicer, notified Plaintiff of her default. The notice informed Plaintiff of the action required to cure her default, the date by which Plaintiff must cure the default (45 days after the notice), and warned her that the Note payment would be accelerated if she failed to cure the default. Plaintiff did not cure the default.

On April 1, 2009, Glasser & Glasser, as substitute trustee, notified Plaintiff of the foreclosure sale scheduled for April 15, 2009. The written notice informed Plaintiff of the date, time, and location of the trustee's sale. Furthermore, the notice included a copy of the executed and notarized appointment of

substitute trustee. Pursuant to Virginia law and the Deed of
Trust, Glasser & Glasser also gave public notice of the
foreclosure by advertising the sale for two consecutive weeks in
the *Washington Examiner*, a newspaper of general circulation in
Prince William County.

The Defendants properly followed the required steps and
procedures for foreclosing on and selling the Property. Indeed,
Plaintiff does not allege any impropriety committed by any of the
Defendants in foreclosing on the Property. Therefore, Plaintiff's
claim of "wrongful foreclosure" fails.

Plaintiff has no factual basis for her quiet title and
declaratory judgment claims. Plaintiff's Amended Complaint
generally asserts a "show me the note" claim, in which Defendants
must come to a court of law and prove their authority or
"standing" to foreclose on the secured Property. The claim is
contrary to Virginia's non-judicial foreclosure laws. Defendants
have now "shown the note" to Plaintiff and confirmed their
ownership and possession of the original Note and Deed of Trust
bearing Plaintiff's original signatures and Fremont's blank
endorsement. Accordingly, Plaintiff's claim that Defendants do
not own and possess the debt obligation at issue is contrary to
the facts.

Plaintiff to asserts a "double recovery" theory based on an
incorrect understanding of credit default swaps, "credit

enhancements," and loan securitization. According to Plaintiff's theory, Defendants may have received a credit "payoff" or swap upon Plaintiff's default. Therefore, the foreclosure on the Property resulted in a double recovery. Plaintiff's double recovery theory fails because it is unsupported by any factual allegations and is contrary to law.

Finally, Plaintiff asserts an erroneous legal theory regarding the "splitting" of the Note from the Deed rendering the Note unsecured and the Deed unenforceable. Contrary to Plaintiff's claims, Virginia law is clear that the negotiation of a note or bond secured by a deed of trust or mortgage carries with it that security. See, e.g., Williams, 139 Va. at 784 ("[W]henever the debt is assigned the deed of trust or mortgage is assigned or transferred with it."); Stimpson, 82 Va. at 200-01 ("It is undoubtedly true that a transfer of a secured debt carries with it the security without formal assignment or delivery."). Thus, even if, as Plaintiff asserts without any factual support, there has been a so-called "split" between the Note and the Deed, the purchaser of the Note, in this case HSBC as trustee, received the debt *in equity* as a secured party. Plaintiff's assertions regarding "splitting" a note and deed are simply contrary to the law and must be dismissed.

For these reasons, Defendants' Motion for Summary Judgment should be GRANTED. An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
May 25, 2010